C. SIDNEY KING, M.D., ET AL.

V.

VIRGINIA BIRTH-RELATED NEUROLOGICAL INJURY
COMPENSATION PROGRAM, ET AL.

Record No. 910213

November 8, 1991

Present: All the Justices

*Henry C. Devening (Petty, Livingston, Dawson & Devening,* on brief), for appellants.

*Guy W. Horsley, Jr., Senior Assistant Attorney General (Mary Sue Terry, Attorney General; K. Marshall Cook, Deputy Attorney General; Janice M. Sigler, Assistant Attorney General,* on brief), for appellees.

JUSTICE HASSELL delivered the opinion of the Court.

In this appeal, we consider State and Federal constitutional challenges to the Virginia Birth-Related Neurological Compensation Act, Code § 38.2-5000, *et seq.*

## I.

This suit was filed by 29 doctors, licensed to practice medicine in this Commonwealth, against the Virginia Birth-Related Neurological Injury Compensation Program, the Virginia Birth-Related Neurological Injury Compensation Board, and the State Corporation Commission. The doctors allege that the Birth-Related Neurological Compensation Act is unconstitutional because it violates their rights to due process and equal protection guaranteed by the State and Federal Constitutions, and violates Article IV, § 14, of the Virginia Constitution which prohibits special legislation.

The Program and the Board filed demurrers, and the State Corporation Commission filed a motion to dismiss. The doctors filed a motion for summary judgment. The trial court sustained the demurrers.

## II.

The Virginia Birth-Related Neurological Injury Compensation Act was enacted by the General Assembly in 1987. Under the Act, an infant who incurs a birth-related neurological injury caused by the negligence of a participating physician cannot maintain a common law tort action against the participating physician other than as provided by the Act, or when there is clear

and convincing evidence that the participating physician willfully or intentionally caused such injury. Code § 38.2-5002(B) and (C). The Act defines "birth-related neurological injury" as an

> injury to the brain or spinal cord of an infant caused by the deprivation of oxygen or mechanical injury occurring in the course of labor, delivery or resuscitation in the immediate post-delivery period in a hospital which renders the infant permanently motorically disabled and (i) developmentally disabled or (ii) for infants sufficiently developed to be cognitively evaluated, cognitively disabled.

Code § 38.2-5001. A "participating physician" is a physician licensed to practice medicine in Virginia and who practices obstetrics or performs obstetrical services full or part-time as authorized in a plan of operation. Code § 38.2-5001.[1]

An infant who incurs a birth-related neurological injury may file a claim against a participating physician with the Industrial Commission, which has jurisdiction to decide all claims made pursuant to the Act. Code §§ 38.2-5003 and -5004. The Industrial Commission is authorized to determine whether the injury is a birth-related neurological injury, whether the obstetrical services were delivered by a participating physician at birth, and how much compensation, if any, is awardable pursuant to the Act. Code §§ 38.2-5008 and -5009.

Each participating physician is required to pay an annual assessment of $5,000 to the Program. Code § 38.2-5020(A). All licensed non-participating physicians in Virginia, with certain limited exceptions, are required to pay an annual assessment of $250, even though they may not be obstetricians or may not perform any obstetrical services.[2] Code § 38.2-5020(D). These assessments are used to fund the Program.

---

[1] The statutory definition of participating physician also includes other providers of obstetrical services who are not involved here. *See* Code § 38.2-5001.

[2] Upon proper certification to the Program, the following doctors are exempt from payment of the annual assessment: (i) physicians employed by the Commonwealth whose income from professional fees is less than an amount equal to 10% of the annual salary of the physician; (ii) a physician enrolled in a full-time graduate medical education program accredited by the American Council for Graduate Medical Education; and (iii) a physician who is retired from active clinical practice. Code § 38.2-5020(D).

## III.

The doctors, who are all "non-participating physicians," argue that the $250 annual assessment imposed upon non-participating physicians violates Article IV, §§ 14 and 15, of the Virginia Constitution. They contend that the Act constitutes a special or private law because it removes certain claims against physicians who practice obstetrical medicine from the traditional tort system and requires that physicians who cannot participate in the Program pay an annual assessment which is used to fund the Program.

## A.

■ All statutes enacted by the General Assembly are presumed to be constitutional. *Etheridge* v. *Medical Center Hospitals*, 237 Va. 87, 94, 376 S.E.2d 525, 528 (1989); *Riddleberger* v. *Chesapeake Railway*, 229 Va. 213, 215, 327 S.E.2d 663, 664 (1985); *Waterman's Association* v. *Seafood, Inc.*, 227 Va. 101, 110, 314 S.E.2d 159, 164 (1984). The doctors, who assail the legislation, have the burden of proving that the Act is unconstitutional, *Riddleberger*, 229 Va. at 215, 327 S.E.2d at 664, and any reasonable doubt as to the statute's constitutionality must be resolved in favor of its validity. *Blue Cross* v. *Commonwealth*, 221 Va. 349, 358, 269 S.E.2d 827, 832 (1980).

## B.

Article IV, § 14, of the Constitution of Virginia provides, in part, that "[t]he General Assembly shall not enact any local, special, or private law . . . [g]ranting to any private corporation, association, or individual any special or exclusive right, privilege, or immunity." Va. Const. art. IV, § 14(18). Article IV, § 15, Va. Const., provides, in pertinent part:

In all cases enumerated in the preceding section, . . . the General Assembly shall enact general laws. Any general law shall be subject to amendment or repeal, but the amendment or partial repeal thereof shall not operate directly or indirectly to enact, and shall not have the effect of enactment of, a special, private, or local law.

. . . .

No private corporation, association, or individual shall be specially exempted from the operation of any general law,

nor shall a general law's operation be suspended for the benefit of any private corporation, association, or individual.

 The constitutional prohibition against special laws does not prohibit legislative classifications. *Holly Hill Farm Corp.* v. *Rowe*, 241 Va. 425, 430, 404 S.E.2d 48, 50 (1991). Rather, the prohibitions require that such classifications be "natural and reasonable, and appropriate to the occasion." *Benderson Development Company* v. *Sciortino*, 236 Va. 136, 140-41, 372 S.E.2d 751, 753 (1988); *Holly Hill*, 241 Va. at 430, 404 S.E.2d at 50. "Taken together, the pervading philosophy of Article IV, sections 14 and 15 reflects an effort to avoid favoritism, discrimination, and inequalities in the application of the laws." *Benderson* at 147, 372 S.E.2d at 756. Additionally, "the necessity for and the reasonableness of classification are primarily questions for the legislature. If any state of facts can be reasonably conceived, that would sustain it, that state of facts at the time the law was enacted must be assumed." *Etheridge*, 237 Va. at 102, 376 S.E.2d at 533 (quoting *Martin's Ex'rs* v. *Commonwealth*, 126 Va. 603, 612-13, 102 S.E. 77, 80 (1920).

In *Etheridge*, we considered several constitutional challenges to Code § 8.01-581.15. That Code provision imposes a monetary limitation on the amount recoverable in a medical malpractice action against a health care provider. The plaintiff in *Etheridge* contended that the limitation violated Article IV, § 14 of the Virginia Constitution because the limitation "confer[s] special privileges and immunities upon a small segment of the population — physicians and their insurers — while at the same time arbitrarily distinguishing between severely injured victims of medical malpractice and less severely injured malpractice claimants as well as all other tort plaintiffs." *Etheridge*, 237 Va. at 102, 376 S.E.2d at 533.

 We held in *Etheridge* that the challenged classification was permissible because the classification bore a reasonable and substantial relation to the object sought to be accomplished by the legislation. *Id.* at 103, 376 S.E.2d at 533. Moreover, we held that "[w]hether a classification is arbitrary 'depends upon the purpose and subject of the particular act and the circumstances and conditions surrounding its passage.' " *Id.* at 102, 376 S.E.2d at 533 (citation omitted). We also observed that the General Assembly had determined that a medical malpractice crisis existed in this Com-

monwealth because health care providers faced increasing difficulty in obtaining affordable malpractice insurance coverage. This situation tended to reduce the number of health care providers available to serve Virginia's citizens, thereby resulting in a significant problem adversely affecting the public health, safety, and welfare. We said that the monetary limitation imposed upon plaintiffs in medical malpractice actions would make medical malpractice insurance coverage available to health care providers. *Etheridge*, 237 Va. at 102-03, 376 S.E.2d at 533.

The trial judge, applying the aforementioned principles and the rationale discussed in *Etheridge*, held that the Act did not violate the prohibition against special legislation. We agree. It is reasonably conceivable that the General Assembly concluded that the removal of the claims of neurologically injured infants from the tort system would decrease the cost of medical malpractice insurance premiums for all physicians and, thus, make medical malpractice insurance available to all physicians practicing in Virginia, including the doctors in this proceeding.[3] Accordingly, we hold that the classification is not arbitrary and that it bears a reasonable and substantial relation to a legitimate object sought to be accomplished by the legislation.

## IV.

The doctors argue that the Act violates the Equal Protection Clause in the Fourteenth Amendment of the United States Constitution. The doctors contend that the Act creates two classifications: licensed physicians who are practicing in Virginia and a specified subclass of physicians which includes obstetricians and physicians providing obstetrical services. The doctors argue that these classifications are invalid because non-participating physicians must pay an assessment to fund the Program, yet, they purportedly receive no benefit from it.

---

[3] The doctors argue that the trial court erred because it made certain findings based on evidence which was not contained in the record in support of its holding that the Act was enacted by the General Assembly to make medical malpractice insurance available to physicians. The doctors' argument fails, however, because the appropriate standard in undertaking a constitutional analysis under Article IV, § 14 of the Constitution of Virginia, the Due Process Clause, and the Equal Protection Clause is whether there are any conceivable facts which existed at the time of the enactment which would render the challenged legislation reasonable. *See Etheridge*, 237 Va. at 102, 376 S.E.2d at 533.

■ The Equal Protection Clause states, in part, that no state shall "deny to any person . . . the equal protection of the laws." U.S. Const. amend. XIV, § 1. Because the challenged classification neither infringes upon a fundamental right nor creates a suspect class, we must apply the rational basis test to ascertain whether the statute can withstand an equal protection challenge. *Exxon Corp.* v. *Eagerton*, 462 U.S. 176, 195-96 (1983); *Hodel* v. *Indiana*, 452 U.S. 314, 331-32 (1981); *Etheridge*, 237 Va. at 103, 376 S.E.2d at 534.

■ A classification will not be invalidated merely because it results in some inequality or some discrimination. *Etheridge*, 237 Va. at 104, 376 S.E.2d at 534. Rather, "[t]he rational basis test is satisfied 'if the legislature could have reasonably concluded that the challenged classification would promote a legitimate state purpose.'" *Id.*, (quoting *Eagerton*, 462 U.S. at 196). Additionally, the range of discretion vested in the states by the Fourteenth Amendment is broad:

[T]he Fourteenth Amendment permits the states a wide scope of discretion in enacting laws which affect some groups of citizens differently than others . . . . State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequity. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*McGowan* v. *Maryland*, 366 U.S. 420, 425-26 (1961).

■ In applying the rational basis test, we must consider whether "any state of facts reasonably may be conceived" to justify the legislature's action. *Id.* at 426. We hold that this test is satisfied, applying the rationale which we discuss in Part III (B) of this opinion.

V.

The doctors also contend that the mandatory assessments imposed by the Act violate their substantive rights of due process guaranteed by the State and Federal Constitutions which provide that no person shall be deprived of life, liberty, or property with-

out due process of law. U.S. Const. amend. XIV, § 1, Va. Const. art. I, § 11.[4]

■ Substantive due process measures the reasonableness of a statute against the legislature's power to enact the law. "[T]he requirements of due process are satisfied if laws have reasonable relation to a proper purpose and are neither arbitrary nor discriminatory." *Duke* v. *County of Pulaski*, 219 Va. 428, 437-38, 247 S.E.2d 824, 829 (1978); *see also Board of Supervisors* v. *State Milk Comm.*, 191 Va. 1, 8-9, 60 S.E.2d 35, 39, *appeal dismissed*, 340 U.S. 881 (1950); *Finney* v. *Hawkins*, 189 Va. 878, 886, 54 S.E.2d 872, 876 (1949); *Stickley* v. *Givens*, 176 Va. 548, 560, 11 S.E.2d 631, 637 (1940). Legislation which does not affect a constitutionally protected status such as a fundamental right will be upheld against a due process challenge if such legislation is rationally related to a legitimate legislative goal. *See Weinberger* v. *Salfi*, 422 U.S. 749, 771-72 (1975); *Etheridge*, 237 Va. at 98, 376 S.E.2d at 530.

■ For the reasons heretofore stated in Part III (B) of this opinion, we hold that the purpose of the Act, which is to make medical malpractice insurance coverage available to licensed physicians, bears a reasonable relationship to the provision for assessments, and that the assessments are neither arbitrary nor discriminatory in a manner prohibited by the State or Federal Constitutions. Accordingly, we hold that the doctors' substantive due process rights have not been violated.

## VI.

For all of the foregoing reasons, we will affirm the judgment of the trial court.

*Affirmed.*

---

[4] The doctors also claim that the Act violates the Anti-Discrimination Clause in Article I, § 11 of the Virginia Constitution. This clause, however, is not applicable because it applies only to "governmental discrimination upon the basis of religious conviction, race, color, sex, or national origin." Va. Const. art. I, § 11. Additionally, when applicable, this provision "is no broader than the Equal Protection Clause of the Fourteenth Amendment to the [United States] Constitution." *Archer and Johnson* v. *Mayes*, 213 Va. 633, 638, 194 S.E.2d 707, 711 (1973).