## CIRCUIT COURT OF THE CITY OF RICHMOND

Allen Michael Huff et al.

v.

Medical College of Virginia
Associated Physicians, etc.

February 10, 1993

Case No. LU-3676–3

BY JUDGE T. J. MARKOW

The parties came before the court on December 10, 1992, on defendants' demurrer and plaintiff's motion to strike that demurrer. The facts pleaded which give rise to this action are as follows.

Allen Michael Huff was born at the Medical College of Virginia Hospital on August 26, 1988, following a problematic labor. The child has been diagnosed as having a neurological disorder; at the age of three years and eight months, his developmental skills were at the level of a three to nine month old baby. He cannot crawl, speak, or feed himself.

Plaintiffs filed a motion for judgment against Medical College of Virginia Associated Physicians and Virginia Commonwealth University Obstetrics and Gynecology Association on September 29, 1992. The basis for defendants' demurrer is their contention that plaintiffs are improperly before this court and must instead file a claim under the Virginia Birth-Related Neurological Injury Compensation Act, Virginia Code § 38.2–5000, et seq. (hereinafter "the Act"). The parties have agreed that the version of the Act in effect in 1988, when Michael was born, controls this action. The question then becomes whether the provisions of the Act apply to the plaintiffs herein.

As an initial matter, this court is satisfied that the injuries to the child as alleged by the plaintiffs do amount to a birth-related neurological injury. The statute requires that the child be rendered "perma-

nently nonambulatory, aphasic, incontinent, and in need of assistance in all phases of daily living." Va. Code Ann. § 38.2–5001 (Michie 1988). The motion for judgment alleges that the child's developmental level is that of a three to nine month old infant; that he cannot crawl, speak, or feed himself; and that he suffers from severe, permanent and debilitating injuries. (Motion for Judgment at 6.) While the language in the motion for judgment does not repeat the statute verbatim, as a practical matter the two documents describe the same type of injuries.

This being established, the provision of the statute describing the Act's scope provides that the "chapter applies to *all claims for birth-related injuries* occurring in this Commonwealth on and after January 1, 1988." Va. Code Ann. § 38.2–5014 (Michie 1988) (emphasis added). The scope is not limited only to claims against certain individuals. The focus is on the type of injuries rather than the identity of potential defendants. Similarly, the exclusivity provision of the Act provides that:

> [t]he rights and remedies herein granted to an infant on account of a birth-related neurological injury shall exclude *all other rights and remedies* of such infant, his personal representative, parents, dependents or next of kin, at common law or otherwise, *arising out of or related to* a medical malpractice claim *with respect to such injury.*

Va. Code Ann. § 38.2–5002(B) (Michie 1988) (emphasis added). The above language also indicates that the Act is fairly broad in its coverage, encompassing all claims related to the injury.

Although an award cannot be made unless services were rendered by a participating physician in a participating hospital, the Act does not specify that only actions against those particular parties are subject to its requirements. The Medical Malpractice Act provides a helpful contrast. The Malpractice Act provides that "[n]o action may be brought for malpractice *against a health care provider* unless the claimant notifies the health care provider in writing by registered or certified mail prior to commencing the action." Va. Code Ann. § 8.01–581.2 (Michie 1988) (emphasis added). It is that language in the Malpractice Act which is often the issue in litigation, i.e., whether a particular entity is a "health care provider" as defined in the statute and thus subject to its provisions. *See, e.g., Gressman v. People's Drug Stores,* 10 Va. Cir. 397 (1988). The provision of the Neurological Injury Act

applicable here does not similarly specify its exclusivity only as to claims against physicians or hospitals. If it did, a threshold determination would have to be made as to whether the Act was applicable to the particular defendants. However, the Act applies to *all* claims "arising out of or related to" the birth-related neurological injury, and the determination of whether services were provided by a participating physician in a participating hospital is left to the Commission. There is an exception to the exclusivity provision whereby suit is permitted if the injuries were inflicted willfully or intentionally. *See* Va. Code Ann. § 38.2–5002(D) (Michie 1990).

It is helpful to note that § 38.2–5006 refers to the Birth-Related Neurological Injury Compensation Program itself as a party to the required hearing, and that § 38.2–5015 establishes the Birth-Related Neurological Injury Compensation Fund to finance the Program. Thus, a claim is made against the Program, and awards made from out of the Fund, rather than recovery from or against a specific individual or entity.

It is true that in *King v. Neurological Injury Comp. Program*, 242 Va. 404 (1991), our Supreme Court stated that "[u]nder the Act, an infant who incurs a birth-related neurological injury caused by the negligence of a participating physician cannot maintain a common law tort action *against the participating physician* other than as provided in the Act." *Id.* at 406 (emphasis added). While the wording in *King* looks like the wording used in the Malpractice Act, this court does not interpret it the same way, i.e., to permit suits against anyone *other* than the participating physician. First, that language was introductory in the *King* opinion, given as background to the enactment of the Act rather than as part of the holding of the case. Second, *King* involved an attack upon the constitutionality of the Act by twenty-nine doctors. It follows that the Supreme Court was discussing the application of the Act to physicians, and its implications for suits against *them*, as the parties before the court. Finally, the Supreme Court makes no mention of the participating hospital, and if the language is read to only preclude suits against the physician, suits against the participating hospital would be permissible, a scenario which is clearly not contemplated under the Act, nor even asserted by the plaintiff. Thus that isolated language in *King* need not affect the holding in this case.

As a final note, counsel for the plaintiff suggested at oral argument that if filing a claim with the Commission under the Act was a prereq-

uisite to filing suit, the Act would contain a provision to toll the statute of limitations. As a matter of fact, the Act does contain just such a provision. This provision, like the exclusivity and scope provisions, does not refer to claims against any particular parties, but rather that "[t]he statute of limitations with respect to *any civil action* that may be brought by or on behalf of an injured infant allegedly *arising out of or related to* a birth related injury shall be tolled by the filing of a claim in accordance with this section . . . ." Va. Code Ann. § 38.2–5005 (Michie 1988).

For the above reasons, it is the opinion of this court that plaintiff must file a claim under the Birth-Related Neurological Injury Compensation Act. As such, this court will not address the merits of plaintiff's contentions that MCV is a nonparticipating hospital and that a nonparticipating physician rendered services at the birth. Should the Commission rule in plaintiff's favor in these arguments, the statute of limitations will have been tolled for plaintiff to file a civil action.

An order sustaining the demurrer [has been entered.]