Present:  All the Justices

JEFFERSON GREEN UNIT OWNERS
ASSOCIATION, INC.

v. Record No. 002574  OPINION BY JUSTICE CYNTHIA D. KINSER
                                        September 14, 2001
JANE W. GWINN, FAIRFAX COUNTY
ZONING ADMINISTRATOR, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Dennis J. Smith, Judge


This appeal involves the question whether a zoning proffer that provides recreational facilities by requiring payment of membership dues in a private recreational association violates the constitutional provision prohibiting special legislation and infringes upon "freedom of association."  Although we conclude that the circuit court erred in finding the proffer unconstitutional, we will affirm the court's judgment requiring a condominium unit owners association to re-establish its membership in the recreational facility and to pay membership dues.  We also conclude that the circuit court correctly determined that the proffer does not violate the limitation in Code § 15.2-2297(A)(v).

I. FACTS AND MATERIAL PROCEEDINGS

Jefferson Green Unit Owners Association, Inc. (Jefferson Green), is a condominium unit owners association whose membership is comprised of the owners of condominiums

in the complex known as Jefferson Green Condominium, which is located in Fairfax County.  In 1976, the Fairfax County Board of Supervisors (the Board) approved a rezoning application for the parcel of land upon which the condominium complex is situated.  The application included voluntary, written proffers by the owner of the property. The Board accepted those proffers pursuant to the authority granted in former Code § 15.1-491(a).  Included in the proffers was a condition that "there will be provided, at the time of construction of the project, not less than the on-site recreational facilities shown on the Development Plan, including tot lot, multi-purpose court and swimming pool complex . . . ."

In 1981, the developer, who had purchased the subject property in 1979, submitted a proffered condition amendment (PCA) seeking further changes in the development plan approved for the condominium complex.  In pertinent part, Proffer No. 3 addressed the requirement of on-site recreational facilities:

> In substitution for the on-site recreation facilities previously proffered the following will be provided:
>
> a.  Pursuant to agreement with the Bren Mar Park Recreation Association, rehabilitation of the facilities of that Association within 180 days of approval of this application.

b.  Purchase of one membership in the Association for each dwelling unit in this development, and provision of these memberships at no charge to each individual unit and/or the condominium association associated therewith, in accordance with the Virginia Condominium Act, other than annual dues which shall be paid by the condominium unit Owner[s] Association.

c.  Funds paid to Bren Mar Park Recreation Association shall be expended for the renovation and improvement of the swimming pool, bath house, tennis courts, and parking lot as determined by the Board of Directors of the Bren Mar Park Recreation Association . . . .

The Board subsequently approved the developer's PCA, including Proffer No. 3, pursuant to Code § 15.1-491(a).

In accordance with Proffer No. 3, the developer paid the initial membership charge for each condominium unit, and Jefferson Green paid the required annual dues to Bren Mar Park Recreation Association (Bren Mar) until 1999.[1]  As a result of Jefferson Green's refusal to pay the 1999 dues, Jane W. Gwinn, Fairfax County Zoning Administrator (the

---

[1] In 1991, Jefferson Green asked the director of Fairfax County's zoning evaluation division whether, under the terms of Proffer No. 3, Jefferson Green could terminate its membership in Bren Mar.  The director advised Jefferson Green that the requested action could not be undertaken without a PCA changing the terms of Proffer No. 3.  In 1996, after Jefferson Green had discontinued its membership in Bren Mar, Fairfax County's zoning administrator ordered Jefferson Green to re-establish that membership and reiterated that a PCA would be necessary to change the terms of Proffer No. 3.  Jefferson Green submitted an application for a PCA in 1997, but the parties dispute whether that application was ever completed.

Zoning Administrator), commenced a suit against Jefferson Green. In that suit, the Zoning Administrator sought a declaratory judgment that Jefferson Green was in violation of Proffer No. 3 and Fairfax Zoning Ordinance § 18-204(3).[2] She also asked the circuit court to enter an injunction requiring Jefferson Green to re-establish membership in Bren Mar and to remit all unpaid annual dues. Jefferson Green answered the suit and also filed a cross-bill, requesting the court to declare Proffer No. 3 void as a matter of public policy and in violation of Code §§ 15.2-2297 and -1102.

After considering the parties' memoranda and argument, the circuit court determined that Code § 15.2-2297 does not apply to Fairfax County and that, therefore, Proffer No. 3 does not violate subsection (A)(v) of that statutory provision. However, the court concluded that Proffer No. 3 is "private legislation" that "create[s] the type of economic favoritism strictly forbidden by the special-law prohibitions of the Virginia Constitution." The court also stated that Proffer No. 3 is tantamount to "forced

---

[2] Fairfax Zoning Ordinance § 18-204(3) provides that "proffered conditions shall become a part of the zoning regulations applicable to the property in question, unless subsequently changed by an amendment to the Zoning Map, and such conditions shall be in addition to the specific

4

association" and that a compelling governmental interest had not been established to justify the government's "dictat[ing] membership into a private organization." Nevertheless, the circuit court held that Proffer No. 3 "must be enforced because Jefferson Green requested and/or consented to [its] adoption" by virtue of its status as the successor-in-interest to the developer who had asked for the zoning amendment and submitted Proffer No. 3. The court concluded that the developer's consent is binding on Jefferson Green and waived any attack on the constitutionality of Proffer No. 3.

In an order incorporating its letter opinion, the circuit court found Jefferson Green in violation of Proffer No. 3. Accordingly, the court directed Jefferson Green to re-establish membership in Bren Mar, to pay and to continue to pay all membership dues owed to Bren Mar, and to refrain from any future violation of Proffer No. 3. The court also dismissed Jefferson Green's cross-bill with prejudice.

## II. ANALYSIS

Jefferson Green assigned three errors to the circuit court's decision, and the Zoning Administrator filed two assignments of cross-error. We will address only Jefferson

---

regulations set forth in this Ordinance for the zoning district in question."

Green's assignment of error regarding the court's finding that Code § 15.2-2297 does not apply to Fairfax County and the Zoning Administrator's assignment of cross-error challenging the court's conclusion that Proffer No. 3 is unconstitutional.

### A. CODE § 15.2-2297

When the property upon which Jefferson Green is situated was rezoned in 1976, Code § 15.1-491(a) allowed counties in which the urban county executive form of government was in effect to adopt, as part of an amendment to a zoning map, reasonable conditions that had been proffered in writing by the owner of the property which was the subject of the proposed zoning map amendment.[3]  In 1978, the General Assembly enacted Code § 15.1-491.2 as part of the 1978 Va. Acts ch. 320.[4]  That Code section provided that a zoning ordinance may include voluntary written proffers by the owner of the subject property as part of a rezoning or amendment to a zoning map, but subsection (v) of Code § 15.1-491.2 prohibited the acceptance of a proffer containing a condition that required "payment for or

---

[3] Code § 15.1-491 was repealed in 1997.  The language pertinent to this appeal contained in Code § 15.1-491(a) was re-codified without any relevant changes as Code § 15.2-2303(A).  Hence, we will refer to Code § 15.2-2303(A)

construction of off-site improvements."  However, Clause 2 of the 1978 Va. Acts ch. 320 stated:

> [T]he provisions of this act shall not be effective as to those counties, cities or towns specified in paragraph (a) of § 15.1-491[, which includes counties that have the urban county executive form of government,] unless and until adopted in whole or in part by amendment of the zoning ordinance.  The provisions of this act are permissive and shall not be construed to limit or restrict the powers otherwise granted to any county, city or town, nor to affect the validity of any ordinance adopted by any such county, city or town which would be valid without regard to this act.

Since Proffer No. 3 provides for the expenditure of funds to renovate and improve the off-site recreational facilities located at Bren Mar, Jefferson Green claims that Proffer No. 3 violates the prohibition against payment for off-site improvements contained in § 15.2-2297(A)(v).  The Zoning Administrator disagrees and asserts that the restrictions in § 15.2-2297(A) do not apply to Fairfax County.  Instead, the Zoning Administrator contends that Fairfax County accepts proffers pursuant to Code § 15.2-2303, which does not include the limitation at issue.  She further argues that Fairfax County has never adopted any of the provisions of Code § 15.2-2297 or its predecessor statute, Code § 15.1-491.2.  We agree with the Zoning Administrator.

_____

[4] Code § 15.1-491.2 was repealed in 1997 and re-

As the circuit court noted, it is not disputed that Fairfax County has adopted the urban county executive form of government. Pursuant to the terms of Clause 2 of the 1978 Va. Acts ch. 320, the provisions of that act, which included former Code § 15.1-491.2, were not "effective as to those counties . . . [having that form of government] unless and until adopted in whole or in part by amendment of the zoning ordinance." Thus, the provisions of Code § 15.1-491.2 did not apply to Fairfax County unless it adopted them.

In contrast, Code § 15.2-2303(A), like its predecessor Code § 15.1-491(a), which was in effect when the Board accepted Proffer No. 3, specifically addresses the acceptance of proffers by counties that have adopted the urban county executive form of government. Unlike Code § 15.2-2297(A), § 15.2-2303(A) does not contain a prohibition against payment for off-site improvements. Neither did former Code § 15.1-491(a). Contrary to Jefferson Green's position, we do not find any conflict between the provisions of Code §§ 15.2-2297(A) and –2303(A), or between their respective predecessor statutes.

However, Jefferson Green argues that the provisions of Code § 15.2-2297(A) control Fairfax County's acceptance of

codified as Code § 15.2-2297(A).

8

proffers because the county adopted those provisions when it enacted Article 1, Part 2, § 1-200(15) of the Constitution of the Fairfax County Zoning Ordinance. That section states, in order "to promote the health, safety and general welfare of the public and to implement the adopted comprehensive plan for the orderly and controlled development of the County," the Zoning Ordinance is designed, among other things, "to accomplish all other objectives and exercise all other powers set forth in Article 7, Chapter 22, Title 15.2 of the Code of Virginia." We disagree with Jefferson Green.

Section 1-200 merely recites the purpose and intent of the Fairfax County Zoning Ordinance. It is not an affirmative adoption of any provision of Article 7, Chapter 22, Title 15.2, in particular the limitation in Code § 15.2-2297(A)(v). In addition, Article I, Part 4, § 1-400 of the Fairfax County Zoning Ordinance makes the text of that ordinance applicable "to any parcel covered by a previous grant of zoning with proffered conditions pursuant to [Code §] 15.2-2303 . . . ." (Emphasis added.)

Further evidence of the fact that Fairfax County has never adopted the provisions of Code § 15.2-2297(A) is found in the resolutions accepting the original rezoning in 1976 and the PCA in 1981. In both instances, the Board

9

stated that its approval was pursuant to Code § 15.1-491(a), now Code § 15.2-2303(A).  Thus, we conclude Fairfax County accepts proffers pursuant to the authority granted in Code § 15.2-2303(A), and previously did so under the provisions of former Code § 15.1-491(a).  The circuit court, therefore, did not err in rejecting Jefferson Green's argument that Proffer No. 3 violates the limitation contained in Code § 15.2-2297(A)(v).

## B. CONSTITUTIONALITY OF PROFFER NO. 3

Article IV, § 14(18) of the Constitution of Virginia provides that "[t]he General Assembly shall not enact any local, special, or private law . . . [g]ranting to any private corporation, association, or individual any special or exclusive right, privilege, or immunity."[5]  In determining whether a particular statute violates this constitutional prohibition, the Zoning Administrator argues

---

[5] Although this constitutional provision is an express limitation upon the power of the General Assembly, we have adjudicated the validity of a county ordinance in W.S. Carnes, Inc. v. Board of Supervisors, 252 Va. 377, 383-84, 478 S.E.2d 295, 300 (1996), and a county contract in Concerned Residents of Gloucester County v. Board of Supervisors, 248 Va. 488, 496-99, 449 S.E.2d 787, 792-93 (1994), in light of the prohibition against special legislation without addressing the fact that the terms of Article IV, § 14(18) speak to the General Assembly. Obviously, "[a] municipality cannot be vested with powers which the General Assembly itself does not possess." McClintock v. Richlands Brick Corp., 152 Va. 1, 23, 145 S.E. 425, 431 (1928).

that the critical inquiry is whether the statute contains an arbitrary classification.  She asserts that a classification is not arbitrary if it bears a reasonable and substantial relationship to a legitimate legislative objective.  Proffer No. 3, according to the Zoning Administrator, is related to and furthers the necessary and reasonable public purpose of providing recreational facilities for the residents of Jefferson Green.  Thus, the Zoning Administrator contends that Proffer No. 3 does not violate Article IV, § 14(18) of the Constitution of Virginia.

Jefferson Green takes a contrary position.  Relying on this Court's decision in McClintock v. Richlands Brick Corp., 152 Va. 1, 145 S.E. 425 (1928), Jefferson Green asserts that Proffer No. 3 is special legislation because it benefits a private organization, Bren Mar.  Given what Jefferson Green terms as "the clear constitutional bar" of Article IV, § 14(18), it asserts that the Board did not have the authority to accept Proffer No. 3 even with the consent of the developer who made the proffer.  We do not agree with Jefferson Green's position because it fails to take into account the reasonable and substantial relationship between Proffer No. 3 and the object it sought to accomplish.

11

We begin our analysis of this issue by noting that, pursuant to Code § 15.2-2303(A) (which, as we have already stated, is the statute under which Fairfax County accepts proffers), a zoning ordinance may include written proffers. Thus, the proffers become part of the zoning ordinance. As such, they are legislative enactments entitled to the presumption of constitutional validity. See Wayside Rest., Inc. v. City of Virginia Beach, 215 Va. 231, 236, 208 S.E.2d 51, 55 (1974) ("ordinance comes to us with the presumption of constitutionality which attaches to all legislative enactments"). In accordance with that presumption, we resolve any doubt in favor of an enactment's constitutionality. Id. (citing Town of Ashland v. Supervisors, 202 Va. 409, 416, 117 S.E.2d 679, 684 (1961)); see also Ex Parte Settle, 114 Va. 715, 719, 77 S.E. 496, 497 (1913).

The constitutional provisions prohibiting special legislation do not proscribe classifications. King v. Virginia Birth-Related Neurological Injury Compensation Program, 242 Va. 404, 409, 410 S.E.2d 656, 659 (1991); Mandell v. Haddon, 202 Va. 979, 989, 121 S.E.2d 516, 524 (1961); Martin's Ex'rs v. Commonwealth, 126 Va. 603, 612, 102 S.E. 77, 80 (1920). However, to pass constitutional scrutiny, a classification "must be natural and reasonable,

12

and appropriate to the occasion."  Id.; accord King, 242 Va. at 409, 410 S.E.2d at 659; Holly Hill Farm Corp. v. Rowe, 241 Va. 425, 430, 404 S.E.2d 48, 50 (1991); Mandell, 202 Va. at 989, 121 S.E.2d at 524.  "[T]he test for statutes challenged under the special-laws prohibitions in the Virginia Constitution is that they must bear 'a reasonable and substantial relation to the object sought to be accomplished by the legislation.' "  Benderson Dev. Co., v. Sciortino, 236 Va. 136, 147, 372 S.E.2d 751, 757 (1988) (quoting Mandell, 202 Va. at 991, 121 S.E.2d at 525); accord Pulliam v. Coastal Emergency Servs. of Richmond, Inc., 257 Va. 1, 18, 509 S.E.2d 307, 317 (1999). "But the necessity for and the reasonableness of classification are primarily questions for the legislature. If any state of facts can be reasonably conceived, that would sustain it, that state of facts at the time the law was enacted must be assumed."  Martin's Ex'rs, 126 Va. at 612-13, 102 S.E. at 80; accord Pulliam, 257 Va. at 18-19, 509 S.E.2d at 317; Holly Hill Farm, 241 Va. at 431, 404 S.E.2d at 50; Mandell, 202 Va. at 989, 121 S.E.2d at 524; Joyner v. Centre Motor Co., 192 Va. 627, 635, 66 S.E.2d 469, 474 (1951).  The party assailing the enactment carries the burden of establishing "that it does not rest upon a reasonable basis, and is essentially arbitrary."  Holly

13

Hill Farm, 241 Va. at 431, 404 S.E.2d at 50 (citing Martin's Ex'rs, 126 Va. at 614, 102 S.E. at 81).

Judged against this analytical framework, we cannot say that Proffer No. 3 violates the constitutional proscription against special legislation. When the Board accepted Proffer No. 3 in 1981, its objective was to provide recreational facilities to the residents of Jefferson Green. In fact, the rezoning in 1976 required on-site recreational facilities. That objective was a legitimate and reasonable legislative purpose. See Code § 15.2-2200 (formerly Code § 15.1-427) (recognizing need for recreational facilities). The Board accomplished its objective by allowing the recreational facilities to be provided at Bren Mar, a recreational complex located across the street from Jefferson Green, rather than requiring on-site facilities. The record before us does not demonstrate the existence of any other recreational facility in the same proximity to Jefferson Green as Bren Mar was at that time. Given the "state of facts at the time the law was enacted," Martin's Ex'rs, 126 Va. at 612-13, 102 S.E. at 80, we believe that Proffer No. 3 was not arbitrary and that it bore "a reasonable and substantial relation to the object sought to be accomplished." Mandell, 202 Va. at 991, 121 S.E.2d at 525.

14

Jefferson Green, nevertheless, contends that this Court's decision in McClintock controls the disposition of the present case. There, the General Assembly, in a special act, authorized "the town council of the town of Richlands . . . to grant to any person, firm or chartered company engaged in mining, manufacturing or merchandising, a right of way for the construction, operation and maintenance of a tramway or railway across, upon or along any of the avenues or streets of said town, for a period not to exceed thirty years . . . ." 152 Va. at 5, 145 S.E. at 426. Pursuant to that act, the town council adopted an ordinance granting a brick company the right to construct a tramway upon a certain street in Richlands for the purpose of hauling clay and shale in tram cars to its kilns for the manufacture of brick. Id. The owner of a lot abutting that street challenged the ordinance, in part, on the basis that it violated the constitutional prohibition against special legislation. Id. at 10, 145 S.E. at 427. This Court agreed with the challenge.

The understood objective of the ordinance was economic development of the town. As we noted in our opinion, the brick company was "the only local enterprise of consequence" and had been contemplating the need to move from the town before it received the franchise to construct

15

a tramway.  Id. at 8-9, 145 S.E. at 427.  However, there was no reasonable and substantial relationship between the legitimate legislative objective of economic development and limiting the right to construct a tramway or railway upon a town street to persons or companies "engaged in mining, manufacturing or merchandising."  Id. at 5, 145 S.E. at 426.  Thus, the ordinance failed constitutional scrutiny because it was not "natural and reasonable, and appropriate to the occasion."  Martin's Ex'rs, 126 Va. at 612, 102 S.E. at 80.

We believe that our decision in King is more directly on point.  In that case, we upheld the constitutionality of the Virginia Birth-Related Neurological Injury Compensation Act, Code §§ 38.2-5000 through -5021, against an attack asserting that it violated the constitutional prohibition against special legislation.  242 Va. at 410, 410 S.E.2d at 660.  The Act required a "participating physician," defined as a physician practicing obstetrics or performing obstetrical services, Code § 38.2-5001, to pay an annual assessment in an amount significantly larger than the annual assessment required from "non-participating physicians."  Id. at 408, 410 S.E.2d at 659.  Those "non-participating physicians" argued that the Act "constitute[d] a special or private law because it

16

remove[d] certain claims against physicians who practice obstetrical medicine from the traditional tort system and require[d] that physicians who cannot participate in the Program pay an annual assessment which is used to fund the Program." Id.

Rejecting that argument, we stated that the General Assembly conceivably concluded that, by removing the claims of certain neurologically injured infants from the tort system, the cost of medical malpractice insurance premiums in the Commonwealth would decline, thereby making medical malpractice insurance available to all physicians practicing in Virginia. Id. at 410, 410 S.E.2d at 660. Based on that state of facts, we held that the classification created by the Act was "not arbitrary and [bore] a reasonable and substantial relation to a legitimate object sought to be accomplished by the legislation." Id.

Thus, we conclude that the circuit court erred in its finding that Proffer No. 3 violates Article IV, § 14(18) of the Constitution of Virginia. It focused only on the fact that Bren Mar is a private organization receiving an economic benefit as a result of Proffer No. 3. The court did not squarely address the reasonable and substantial relationship between the Board's objective and Proffer No.

17

3.  Nor did the court consider the state of facts in existence when the Board accepted Proffer No. 3.

Citing Abood v. Detroit Bd. of Educ., 431 U.S. 209 (1977); Shelton v. Tucker, 364 U.S. 479 (1960); and NAACP v. Committee, 204 Va. 693 (1963), the circuit court also concluded that Proffer No. 3 infringes upon "freedom of association" and that there was no compelling governmental interest to justify Jefferson Green's "forced" membership in Bren Mar.  In its letter opinion, the court did not indicate, however, whether it believed that Proffer No. 3 violates the First Amendment of the Constitution of the United States and/or Article I, § 12 of the Constitution of Virginia.  Regardless of the basis of the court's decision, we conclude that it erred.

In City of Dallas v. Stanglin, 490 U.S. 19, 24 (1989), the Supreme Court of the United States once again stated that the First Amendment protects two different kinds of "freedom of association."  See also Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984).  The first type involves " 'choices to enter into and maintain certain intimate human relationships [that] must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme.' "  Stanglin, 490

18

U.S. at 24 (quoting Roberts, 468 U.S. at 617-18). The second type of "freedom of association" involves the " 'right to associate for the purpose of engaging in those activities protected by the First Amendment-speech, assembly, petition for the redress of grievances, and the exercise of religion.' " Id. (quoting Roberts, 468 U.S. at 618). The Court further stated, "[W]e do not think the Constitution recognizes a generalized right of 'social association . . . .' " 490 U.S. at 25.

To the extent, if any, that Proffer No. 3 infringes upon "freedom of association," the affected association is not one involving intimate human relationships or activities specifically protected by the First Amendment. Instead, it is only a generalized "social association," which is not a right recognized by the Constitution. Id. The cases relied upon by the circuit court in support of its decision on this issue are inapposite because they involved the second type of "freedom of association" discussed in Stanglin. 490 U.S. at 24.

### III. CONCLUSION

In summary, we will affirm the part of the circuit court's judgment in which it concluded that Proffer No. 3 does not violate Code § 15.2-2297(A)(v). We will reverse the portion of the court's judgment finding Proffer No. 3

19

to be unconstitutional.  Accordingly, since Proffer No. 3 is valid and enforceable, we will also affirm the circuit court's judgment finding Jefferson Green in violation of Proffer No. 3, directing Jefferson Green to re-establish membership in Bren Mar and to pay all monies owed to Bren Mar, and enjoining Jefferson Green from any future violation of Proffer No. 3.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and final judgment</u>.