COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Felton and McClanahan
Argued at Salem, Virginia


VIRGINIA BIRTH-RELATED NEUROLOGICAL
 INJURY COMPENSATION PROGRAM
                                                          MEMORANDUM OPINION[*] BY
v.        Record No. 1218-05-3                    JUDGE ROBERT J. HUMPHREYS
                                                                  MARCH 7, 2006
ALLEN McGRADY AND TARA McGRADY,
 PARENTS OF THE INFANT COMPLAINANT,
 MASON A. McGRADY


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Jill M. Ryan, Assistant Attorney General (Judith Williams
              Jagdmann, Attorney General; Francis S. Ferguson, Deputy Attorney
              General; Angela Boice Axselle, Assistant Attorney General, on
              brief), for appellant.

              T. Daniel Frith, III (Frith Law Firm, on brief), for appellees.


        Appellant Virginia Birth-Related Neurological Injury Compensation Program (the

"Program") appeals a decision from the Virginia Workers' Compensation Commission

("commission") determining that Mason Allen McGrady (the "infant"), son of appellees Allen

McGrady and Tara McGrady (collectively, "parents" or "appellees"), has a "birth-related

neurological injury" within the meaning of the Virginia Birth-Related Neurological Injury

Compensation Act (the "Act"), Code § 38.2-5001 et seq.  The Program argues that the

commission erred in determining that the infant is "permanently, motorically disabled,"

"developmentally disabled," and "will permanently require assistance in all activities of daily

living."  For the reasons that follow, we disagree and affirm the judgment below.

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.  Moreover,
as this opinion has no precedential value, we recite only those facts necessary to our holding.

# I. MOTION TO DISMISS

Initially, we must resolve the merits of appellees' motion to dismiss, which argues that the appeal should be dismissed for failure to comply with three applicable procedural rules. Specifically, appellees argue that they did not receive a copy of the Program's brief within the time period prescribed by Rule 5A:19(f), nor did the certification at the end of the Program's brief comply with the requirements of Rule 5A:20(h). Appellees further contend that the Program, in its "Question Presented," did not cite to the specific page of the transcript, appendix, or record where the issues on appeal were preserved, thereby violating Rule 5A:20(c). For the reasons that follow, we disagree and deny the appellees' motion to dismiss.

## A. Rule 5A:19(f)

Rule 5A:19(f) provides, in pertinent part, that "one copy" of an appellant's brief "shall be mailed or delivered to opposing counsel on or before the date of filing" with this Court. Appellees contend that the Program failed to comply with this rule because they did not receive a copy of the Program's opening brief until eleven days after the Program's brief was filed with this Court. We disagree.

The Program filed its opening brief with this Court on July 22, 2005. It is undisputed that the Program mailed appellees a copy of the brief on the same day. However, the address on the envelope was incorrect, and the brief was returned to the Attorney General on Friday, July 29, 2005. The brief was then remailed to the correct address via overnight mail on Monday, August 1st. Appellees received the brief on August 2, 2005, eleven days after the opening brief was filed in this Court.

Based on these facts, it is clear the Program complied with Rule 5A:19(f). Specifically, the Program mailed "one copy" of its opening brief to appellees on the same date that the opening brief was filed in this Court. Although appellees' actual receipt of the brief was delayed

because of an improper address, Rule 5A:19(f) does not require timely receipt of the brief by opposing counsel as a prerequisite for compliance with the rule. Rather, compliance with the rule is established as long as the brief is actually mailed "on or before the date of filing."

Appellees also contend that the late arrival of the opening brief deprived them of an adequate opportunity to prepare an appropriate response. We note, however, that, according to Rule 5A:19(e), "[b]y agreement of all counsel and with permission of a judge of the Court of Appeals, the time for filing any brief in the Court of Appeals may be altered." Had appellees believed they did not have enough time to prepare a brief in response to the Program's opening brief, they could have requested additional time under the provisions of Rule 5A:19(e). By failing to do so, appellees cannot now complain that they lacked an adequate opportunity to prepare their brief in response.

Thus, we conclude that, under the circumstances of this case, the Program complied with the provisions of Rule 5A:19(f).

### B. Rule 5A:20(h)

Rule 5A:20(h) provides, in pertinent part, that an appellant's opening brief must contain "[a] certificate (which need not be signed in handwriting)" indicating "that Rule 5A:19(f) has been complied with." Appellees argue that the certification appended to the Program's opening brief fails to meet the requirements of this rule, reasoning that the certification was improperly dated. We disagree.

The certification appended to the Program's opening brief states as follows:

> I hereby certify that I have complied with Rule 5A:19(e)[1] and a
> true and correct copy of the foregoing BRIEF OF APPELLANT
> was send by first class mail and facsimile on June 28, 2005 to
> [counsel for appellees].

---

[1] The current Rule 5A:19(f) was formerly designated as Rule 5A:19(e). The amendments that altered the numbering of Rule 5A:19 were not made effective until August 15, 2005—several weeks after the Program filed its opening brief.

As discussed above, the Program's opening brief was filed on July 22, 2005, rather than June 28, 2005. However, although the certification unquestionably contains a typographical error, such an error does not invalidate the certification required by Rule 5A:20(h). Compliance with the rule is established by the mere fact of the certification. Thus, absent proof that the misrepresentation was knowingly made with the intent to mislead this Court, an inaccuracy in the certification does not constitute a violation of Rule 5A:20(h). Accordingly, we hold that the certification appended to the Program's opening brief complies with the requirements of Rule 5A:20(h).

### C. Rule 5A:20(c)

Finally, appellees contend that the Program violated Rule 5A:20(c) because it did not cite to the transcript, appendix, or record within the "Questions Presented" section of the Program's opening brief. The Program disagrees, reasoning that, because the required references appear in the "Statement of the Case," its brief sufficiently complies with Rule 5A:20(c). For the reasons that follow, we agree with the Program.

Rule 5A:20(c) provides that an appellant's opening brief must contain "[a] statement of the questions presented with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each question was preserved in the trial court." Because this Court "will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief," Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992), we will not consider a "Question Presented" that is unsupported by the references required by Rule 5A:20(c). See, e.g., Barrs v. Barrs, 45 Va. App. 500, 512, 612 S.E.2d 227, 232-33 (2005); Courembis v. Courembis, 43 Va. App. 18, 26, 595 S.E.2d 505, 509 (2004).

The text of Rule 5A:20(c) requires "[a] statement of the questions presented *with* a clear and exact reference to the page(s) . . . where each question was preserved in the trial court."

(Emphasis added).  The plain language of this rule, however, does not require that those references be contained within the "Questions Presented" themselves.  In Mullin v. Mullin, 45 Va. App. 289, 610 S.E.2d 331 (2005), for example, the appellee contended that appellant's failure "to cite any record citations as to where he preserved any of his four questions presented," as required by Rule 5A:20(c), barred this Court's consideration of the appeal.  Id. at 300 n.4, 610 S.E.2d at 336 n.4.  However, we noted that, on page 3 of his opening brief, appellant did cite to various pages in the appendix, but identified the references "by page and line number . . . rather than by using the abbreviation 'JA____.'"  Id.  This Court found appellant's citation to the appendix sufficient to pass muster under Rule 5A:20(c).  Id.

Similarly, although the Program did not cite to the appendix or the record in the "Questions Presented" section of its brief, it did provide the required citations in its "Statement of the Case."  Although it did so inartfully, because the Program provided the required citations in the text of its opening brief, we hold that the Program sufficiently complied with the requirements of Rule 5A:20(c).  See id.; see also Taylor v. Commonwealth, 28 Va. App. 498, 504, 507 S.E.2d 89, 91 (1998) ("The provisions of Rule 5A:20 are not jurisdictional.").

For these reasons, we hold that the Program substantially complied with all applicable provisions of Rules 5A:19(f), 5A:20(c), and 5A:20(h).  Accordingly, we deny appellees' motion to dismiss the appeal.

## II.  MERITS OF THE APPEAL

On appeal, the Program raises two separate, but related issues.  First, the Program contends the commission erred in finding the infant to be both "permanently, motorically disabled" and "developmentally disabled."[2]  Second, the Program contends that the commission

_____

[2] The Program's original "Questions Presented" divided this issue into two separate questions presented.  However, in the discussion section of its opening brief, the Program collapses its separate "Questions Presented" into a single issue, focusing on whether the evidence

erred in determining that the infant "will permanently require assistance in all activities of daily living." Because credible evidence in the record supports each of these findings, we affirm the judgment below.

On appeal from a decision awarding or denying benefits under the Virginia Birth-Related Neurological Injury Compensation Act, "we view the evidence in the light most favorable to the prevailing party before the commission." Cent. Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield, 42 Va. App. 264, 269, 590 S.E.2d 631, 636 (2004). Also, on appeal, we defer to the commission's findings of fact even "'if the weight of the evidence is contrary to those findings.'" Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 268 (2000) (quoting Kane Plumbing v. Small, 7 Va. App. 132, 136, 371 S.E.2d 828, 831 (1988)); see also Code § 38.2-5011(A). Thus, the appearance of "contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Wolfe v. Va. Birth-Related Neurological Injury Comp. Program, 40 Va. App. 565, 580, 580 S.E.2d 467, 474 (2003). We further note that "[q]uestions raised by conflicting medical opinions must be decided by the commission." Id. Accordingly, because determinations relating to the credibility of evidence are within the sole province of the commission, the commission's decision to assign controlling weight to a particular medical opinion will not be disturbed on appeal. See id.

The Virginia Birth-Related Neurological Injury Compensation Act was established to provide compensation to those families whose newborn children suffer "birth-related neurological injuries." See Code §§ 38.2-5000 through 38.2-5021. Under the Act,

> an infant who incurs a birth-related neurological injury caused by the negligence of a participating physician cannot maintain a common law tort action against the participating physician other than as provided by the Act, or when there is clear and convincing

was sufficient to demonstrate that the infant was developmentally or cognitively disabled. Accordingly, we will do the same.

- 6 -

evidence that the participating physician willfully or intentionally caused such injury.

King v. Va. Birth-Related Neurological Injury Comp. Program, 242 Va. 404, 406-07, 410 S.E.2d 656, 658 (1991). Rather, an infant who incurs a birth-related neurological injury should instead "file a claim against a participating physician with the [Workers' Compensation] Commission, which has jurisdiction to decide all claims made pursuant to the Act." Id. at 407, 410 S.E.2d at 658. The commission, then, "is authorized to determine whether the injury is a birth-related neurological injury, whether the obstetrical services were delivered by a participating physician at birth, and how much compensation, if any, is awardable pursuant to the Act." Id. at 407, 410 S.E.2d at 657-58.

Code § 38.2-5001 defines a "birth-related neurological injury" as follows:

> "Birth-related neurological injury" means injury to the brain or spinal cord of an infant caused by the deprivation of oxygen or mechanical injury occurring in the course of labor, delivery or resuscitation in the immediate post-delivery period in a hospital which renders the infant permanently motorically disabled *and* (i) developmentally disabled *or* (ii) for infants sufficiently developed to be cognitively evaluated, cognitively disabled.

(Emphasis added). Thus, to qualify as a "birth-related neurological injury," the infant must be both (1) "permanently motorically disabled," and (2) either "developmentally disabled" or "cognitively disabled." Id. Moreover the injury must be of a sort that "shall cause the infant to be permanently in need of assistance in all activities of daily living." Id.

The Act further provides, however, that

> A rebuttable presumption shall arise that the injury alleged is a birth-related neurological injury where it has been demonstrated, to the satisfaction of the Virginia Workers' Compensation Commission, that the infant has sustained a brain or spinal cord injury caused by oxygen deprivation or mechanical injury, and that the infant was thereby rendered permanently motorically disabled and (i) developmentally disabled or (ii) for infants sufficiently developed to be cognitively evaluated, cognitively disabled.

- 7 -

Code § 38.2-5008(A). Thus, if a claimant can prove: (1) that the infant sustained an injury to the brain or the spinal cord that was caused by deprivation of oxygen or a mechanical injury, and (2) that the injury rendered the infant "permanently motorically disabled" and either "developmentally disabled" or "cognitively disabled," then a presumption arises that a birth-related neurological injury exists. Whitfield, 42 Va. App. at 269, 590 S.E.2d at 636. If the respondent disagrees that the presumption applies, that party has the burden of proving that the injuries alleged are not birth-related neurological injuries within the meaning of the chapter. Va. Birth-Related Neurological Injury Comp. Program v. Young, 34 Va. App. 306, 310, 541 S.E.2d 298, 300 (2001).

A. Whether the Evidence Was Sufficient to Prove that the Infant Is Developmentally or Cognitively Disabled

Under the circumstances of this case, the Program contends that the commission erred in determining that the presumption of Code § 38.2-5008(A) applies, reasoning that the evidence failed to demonstrate that the infant was both "permanently motorically disabled" and "developmentally disabled." Specifically, the Program argues that, although the infant is a paraplegic, proof of physical disability, standing alone, is insufficient to qualify the infant for benefits under the Act. Although we agree that proof that an infant is "permanently motorically disabled" does not necessarily constitute proof that the infant is also "developmentally disabled," we hold that, under the circumstances of this case, credible evidence in the record supports the commission's determination that the infant has both a motorical disability and a developmental disability. Accordingly, we affirm.

Initially, we must determine what, exactly, constitutes a developmental disability within the meaning of the Code § 38.2-5001. This presents a pure issue of statutory construction, which we review *de novo* on appeal. See Sink v. Commonwealth, 28 Va. App. 655, 658, 507 S.E.2d 670, 671 (1998) ("[A]lthough the trial court's findings of historical fact are binding on appeal

unless plainly wrong, we review the trial court's statutory interpretations and legal conclusions *de novo*.").

We begin, as always, with the plain language of the statute, for "'[w]here the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.'" Barr v. Town & Country Props., Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934)). "We must . . . assume that the legislature chose, with care, the words it used when it enacted the . . . statute, and we are bound by those words as we interpret the statute." Id.

We note at the outset that the legislature did not expressly define the phrase "developmental disability." The accepted medical definition of "developmental disability," however, is a "loss of function brought on by prenatal and postnatal events in which the predominant disturbance is in the acquisition of cognitive, language, *motor*, or social skills." Stedman's Concise Medical Dictionary for the Health Professions 241 (3d ed. 1997) (emphasis added); see also 42 U.S.C. § 15002(8) (defining "developmental disability" as a "severe, chronic disability" that "is attributable to a mental *or physical* impairment" that "results in substantial functional limitations" in, *inter alia*, the individual's self-care, mobility and capacity for independent living (emphasis added)). A "developmental disability," then, need not relate directly to a child's cognitive capacity.[3] Rather, a "developmental disability" is any impairment

---

[3] We note that, in Code § 38.2-5001, the legislature provided that a "birth-related neurological injury" requires proof that the infant is "permanently motorically disabled" and that the infant is *either* "developmentally disabled" *or* "cognitively disabled." To hold that the phrases "developmentally disabled" and "cognitively disabled" were synonymous would violate the "elementary rule of statutory construction that every word in the statute must be given its full effect . . . ." Home Beneficial Life Ins. Co. v. Unemployment Compensation Comm'n, 181 Va. 811, 819, 27 S.E.2d 159, 162 (1943).

in the infant's physiological development, including a "disturbance" in the "acquisition" of the child's "motor" skills. Stedman's, supra, at 241.

Thus, we must consider whether there is credible evidence in the record to support the commission's determination that the infant's physiological development has been impaired. When viewed in the light most favorable to appellees, the evidence establishes that the infant was born via emergency caesarian section on March 8, 2002. During the infant's birth, he incurred injuries to his head and spinal cord.[4] As a result, the infant had difficulty breathing, lacked spontaneous movement of his lower extremities, and failed to respond to painful stimuli applied to his lower extremities. The infant was ultimately diagnosed with paraplegia, abnormal rectal tone, and a "partial neurogenic bladder."

As a result of his birth-related injury, the infant has undergone physical therapy to strengthen his abdominal and back muscles so that he can maintain a sitting position without aid. The infant has also had "aggressive" physical therapy to help him develop control over the muscles in his arms and hands, and he has undergone occupational therapy in an attempt to address his breathing problems. Currently, the infant is unable to move his legs, he has restricted movement of his left arm, he lacks control of his bowels and bladder, and he is unable to cough productively.

From these facts, the commission concluded that the infant's "condition and failure to meet developmental milestones of self-care and motoring skills, and his need for intensive developmental therapies," rendered him developmentally disabled. Credible evidence in the record supports this finding. Specifically, in addition to his paraplegia, the infant requires "aggressive" physical therapy to assist with the development of his abdominal muscles, back

---

[4] The Program does not contend that the evidence was insufficient to establish that the infant suffered a birth-related injury to the brain or the spinal cord that was caused by either deprivation of oxygen or a mechanical injury.

muscles, diaphragm, and use of his arms and hands. One of the infant's treating physicians noted that the infant's motor skills, although impaired, "had seen improvement with physical therapy." Similarly, the Program's physician noted that, "from a developmental review," the infant was "behind" in his "motor abilities" and "has not progressed as . . . hoped." From these facts, the commission could reasonably have concluded that the infant is undergoing physiological improvement in his abdominal muscles, back muscles, diaphragm, and upper extremities, but that the infant's development of these muscle groups has been slowed by his birth-related injuries.

Accordingly, we hold that credible evidence in the record supports the commission's determination that the infant has a "developmental disability" within the meaning of Code § 38.2-5001. Although there may be evidence to support the Program's position, the appearance of "contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Wolfe, 40 Va. App. at 580, 580 S.E.2d at 474. Thus, we affirm the commission's determination that the infant has both a "permanent motorical disability" and a "developmental disability," as required by Code § 38.2-5001.

B. Whether the Evidence Was Sufficient to Prove that the Infant Would Require Assistance in All Activities of Daily Living

According to Code § 38.2-5001, to qualify as a "birth-related neurological injury," the disability must "cause the infant to be permanently in need of assistance in all activities of daily living." Here, the Program also contends that the commission erred in concluding that the infant will need assistance in "all" activities of daily living. The Program reasons that, because the medical evaluations indicate that the infant can communicate, grasp, hold, and reach items, he will in turn be able to perform functions such as brushing his teeth, feeding himself, and rolling a wheelchair. However, because there is credible evidence in the record supporting the commission's conclusion, we affirm.

- 11 -

Initially, we note that, once a claimant has established that the infant: (1) sustained a brain or spinal cord injury caused by oxygen deprivation or mechanical injury, (2) that rendered the infant "permanently motorically disabled" and either "developmentally disabled" or "cognitively disabled," the claimant is entitled to a presumption that the injury is a birth-related neurological injury. Code § 38.2-5008(A). Hence, once these two elements have been established, the claimant is entitled to a presumption that the infant will require assistance with all activities of daily living, as required by Code § 38.2-5001. See Whitfield, 42 Va. App. at 273, 590 S.E.2d at 636 ("When these two predicate facts are proved, the factfinder may presume that elements two and four of the statutory definition [in Code § 38.2-5001] are also met."). And, "[o]nce the presumption applies, the burden of proof shifts to the party opposing the presumption to disprove elements two and four, and thereby establish 'that the injuries alleged are not birth-related neurological injuries within the meaning of the chapter.'" Id. (quoting Wolfe, 40 Va. App. at 578, 580 S.E.2d at 474).

As discussed above, the infant successfully demonstrated that he sustained a brain or spinal cord injury during birth, thereby rendering him both "permanently motorically disabled" and "developmentally disabled." Thus, the infant was entitled to a presumption that he will require assistance with all activities of daily living, see id., and the Program had the burden of proving that the infant would not require such assistance. Our inquiry on appeal, then, is whether the commission erred in determining that the Program failed to meet this burden. We hold that it did not.

When viewed in the light most favorable to the infant, the evidence establishes that the infant cannot move his legs and that he does not have full control and movement of his left arm. He lacks control of his bowels and his bladder, has difficulty breathing, and cannot cough. He also has an increased susceptibility to respiratory infections. From these facts, the commission

- 12 -

could reasonably have concluded that the infant will be permanently confined to a wheelchair and that he will need constant daily supervision and assistance from his caregivers.

Thus, we hold that the commission did not err in determining that the Program failed to rebut the statutory presumption that the infant will need assistance in all activities of his daily living, as required by Code § 38.2-5001. Accordingly, we conclude that the commission did not err in holding that the infant has a "birth-related neurological injury" within the meaning of the Act.

### III. CONCLUSION

For these reasons, we hold that the commission did not err in qualifying the infant to receive funds from the Virginia Birth-Related Neurological Injury Compensation Program. Accordingly, we affirm the judgment below.

<u>Affirmed.</u>

McClanahan, J., dissenting, in part, and concurring, in part.

I agree with the majority's conclusion that the Program substantially complied with the procedural rules and that the McGradys' motion to dismiss should be denied. However, I dissent from the majority's decision to affirm.

In order to qualify under the Act, Code § 38.2-5001 requires the infant to establish that he is "permanently motorically disabled *and* (i) developmentally disabled *or* (ii) for infants sufficiently developed to be cognitively evaluated, cognitively disabled." (Emphases added). The commission concluded the infant had established he was motorically disabled and developmentally disabled. In affirming this decision, the majority focuses on the second part of the statutory phrase, developmentally *or* cognitively disabled, and concludes that a motoric disability may, and in this case does, constitute a developmental disability. This statutory interpretation ignores the plain language of the statute, the General Assembly's use of the preceding conjunction "and."

We assume the legislature chose its word with care, Barr v. Town & Country Props. Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990), and may not depart "from the words used when the [legislature's] intention is clear," Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944). The plain language of the statute requires proof of a motoric "and" developmental disability. Therefore, a motoric disability cannot be a component of a developmental disability. "[A]ll the words used [in a statute] are presumed to have an effect." Level 3 Commc'ns of Virginia, Inc. v. State Corp. Comm'n, 268 Va. 471, 477, 604 S.E.2d 71, 73 (2004) (where two requirements are stated, the use of the same evidence to prove both renders the second requirement "superfluous"). Clearly, the legislature required a different, additional disability when it added developmental or cognitive disability *after* motoric disability. See Varga v. Commonwealth, 260 Va. 547, 551, 536 S.E.2d 711, 714 (2000) ("by use of the

- 14 -

conjunctive 'and,' the statute is clear that *both*" components must be met (emphasis added));

Tucker v. Wimer, 42 Va. App. 42, 45, 590 S.E.2d 73, 74 (2003) (same).

For these reasons, I would hold that the commission erred in finding the infant proved he was motorically and developmentally disabled.  Accordingly, I would reverse the commission's determination that the infant qualified under the Act.