COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Kelsey and McClanahan
Argued at Richmond, Virginia

ELSIE LORRAINE LILLY
                                                            OPINION BY
v.            Record No. 1635-05-4        JUDGE D. ARTHUR KELSEY
                                                            JULY 31, 2007
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CULPEPER COUNTY
John R. Cullen, Judge

Michael R. Zervas (Bradley Law Firm, P.C., on brief), for
appellant.

Eugene Murphy, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Convicted of driving after being declared an habitual offender, Elsie Lorraine Lilly

contends that a partial repeal of the habitual offender statute in 1999 rendered continuing

enforcement of the unrepealed portion unconstitutional. She also contends the trial court

improperly precluded her counsel from informing the jury, prior to sentencing, about the

mandatory minimum punishment she would face as a declared habitual offender and the

legislative abolition of further civil declarations of habitual offender status. Finding her

conviction suffered from neither error, we affirm.

I.

After her third drunk driving conviction in 1996, Lilly was civilly declared an habitual

offender. Her driver's license was revoked indefinitely as a result. Undeterred, Lilly continued

to drive illegally and was convicted in September 2003 for driving as an habitual offender. Lilly

was caught driving again in July 2004. The Commonwealth indicted Lilly for driving after

having been declared an habitual offender (second or subsequent offense) triggering the

mandatory minimum sentence of one-year incarceration pursuant to Code § 46.2-357(B)(3).

At trial, Lilly attacked the habitual offender statute as unconstitutional on various grounds. The 1999 partial repeal of the habitual offender statute, Lilly argued, violates (i) the equal protection and due process provisions of the Fourteenth Amendment to the United States Constitution, and (ii) the special laws prohibitions of §§ 14-15 of Article IV of the Virginia Constitution. Lilly also claimed the right to comment upon, present testimony concerning, and receive jury instructions about, the mandatory minimum sentence required by the habitual offender statute, Code § 46.2-357, and the legislative discontinuance of further civil habitual offender declarations. Finding none of these arguments persuasive, the trial court entered final judgment confirming the jury's guilty verdict. Similarly unpersuaded, we affirm Lilly's conviction.

II.

A.    THE CONSTITUTIONALITY OF THE 1999 PARTIAL
REPEAL OF THE HABITUAL OFFENDER STATUTE

*Statutory History*.  The General Assembly enacted Virginia's first vehicular habitual offender statute in 1968. See former Code §§ 46.1-387.1 to 46.1-387.12 (Supp. 1968) (1968 Va. Acts, ch. 476). Its purpose was to "promote highway safety by denying the privilege of operating motor vehicles to those persons 'who by their conduct and record' have demonstrated their lack of concern for the safety of others and their disrespect for law and authority." Davis v. Commonwealth, 219 Va. 808, 812, 252 S.E.2d 299, 301 (1979) (quoting former Code § 46.1-387.1); see also Varga v. Commonwealth, 260 Va. 547, 552, 536 S.E.2d 711, 714 (2000).

The habitual offender statute served as a civil recidivist provision mandating revocation of a driver's license upon conviction of a certain number of predicate driving offenses. The statute also created a criminal offense of driving after being declared an habitual offender. See Code § 46.2-357 (formerly Code § 46.1-387.8 (1968 Va. Acts, ch. 476)). Over the years, the

- 2 -

General Assembly amended the habitual offender statute several times — sometimes including new predicate offenses, sometimes excluding prior ones.[1]

Effective July 1, 1999, the General Assembly repealed the then-current method of declaring a driver to be an habitual offender. Under that process, the Division of Motor Vehicles would make such a declaration in a civil administrative proceeding subject to judicial review. The General Assembly, however, did not repeal the criminal provision prohibiting previously declared habitual offenders from driving. See 1999 Va. Acts, chs. 945, 987; see generally Varga, 260 Va. at 549 n.1, 536 S.E.2d at 712 n.1 (noting "the status of persons declared habitual offenders prior to [1999] was not affected by the repeal").

Following the partial repeal, an habitual offender's first violation generally receives a misdemeanor conviction carrying a mandatory minimum sentence of ten days in jail. See Code § 46.2-357(B)(1). An habitual offender caught driving in an unsafe manner, or while intoxicated (if previously convicted as a drunk driver), generally receives a felony conviction carrying a mandatory minimum sentence of one year. See Code § 46.2-357(B)(2). The same one-year mandatory minimum sentence is imposed on any recidivist who, like Lilly, has been previously convicted of driving as an habitual offender. See Code § 46.2-357(B)(3).

To punish future recidivist drivers who had not been declared habitual offenders under the pre-1999 system, the General Assembly chose to rely on mandatory minimum punishments tailored to specific predicate offenses at the offender's criminal trial rather than continue the cumbersome civil declaration process. See, e.g., Code §§ 18.2-36.1, 18.2-51.4, 18.2-270, 46.2-391. The 1999 partial repeal reformed the treatment of recidivist drivers to continue recognizing the public safety threat deemed to exist with drivers previously declared habitual

---

[1] See former Code §§ 46.2-351(1)(b) (1997 Va. Acts, ch. 691); 46.2-351(1)(a) (1993 Va. Acts, ch. 291); 46.2-351(1)(c) (1992 Va. Acts, ch. 875); 46.2-351(1)(b) (1989 Va. Acts, chs. 705, 727); 46.1-387.2(a)(3) (1974 Va. Acts, ch. 53); 46.1-387.2(a)(5) (1970 Va. Acts, chs. 507, 724).

offenders, while simultaneously ensuring that offenders later found to be recidivists received enhanced penalties roughly proportionate to that of declared habitual offenders.

*Equal Protection & Due Process*.  Lilly argues the 1999 partial repeal created an unconstitutional anomaly by dividing recidivist drivers into two categories:  those declared habitual offenders prior to July 1, 1999 (thus subject to conviction and penalties for driving while in that status) and those who commit certain recidivist driving offenses on or after July 1, 1999 (thus subject only to specific recidivism penalties of the underlying offenses).  Offenders in the first group, Lilly points out, receive mandatory minimum sentences under Code § 46.2-357, while offenders in the second group are subject to a range of sentencing options.  Lilly argues this disparity violates the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution and the special laws prohibitions of the Virginia Constitution.

As always, we "begin our analysis with basic principles of judicial review.  All legislative acts are 'presumed to be constitutional.'"  Boyd v. County of Henrico, 42 Va. App. 495, 506, 592 S.E.2d 768, 774 (2004) (*en banc*) (quoting In re Phillips, 265 Va. 81, 85, 574 S.E.2d 270, 272 (2003)).  "This presumption is 'one of the strongest known to the law.'"  Id. at 507, 592 S.E.2d at 774 (quoting Harrison v. Day, 200 Va. 764, 770, 107 S.E.2d 594, 598 (1959)).  "Under it, courts must 'resolve any reasonable doubt' regarding the constitutionality of a law in favor of its validity."  Id. (citations omitted).  "To doubt is to affirm."  Id. (quoting Peery v. Bd. of Funeral Dirs., 203 Va. 161, 165, 123 S.E.2d 94, 97 (1961) (quoting City of Roanoke v. Elliott, 123 Va. 393, 406, 96 S.E. 819, 824 (1918))).

These principles of judicial restraint apply with particular force in cases where, as here, the litigant cannot claim membership in any insular and discreet suspect class or assert a violation of any fundamental right.  In such cases, the Fourteenth Amendment's equal protection and due process clauses invalidate only those laws that offend principles of minimum rationality.

Minimum rationality requires only that "a rational relationship exists between the disparity of treatment and some legitimate governmental purpose," and classifications reviewed under it are "accorded a strong presumption of validity." Gray v. Commonwealth, 274 Va. 290, 308, 645 S.E.2d 448, 459 (2007) (citations omitted).

Under the minimum rationality standard, the General Assembly need not "actually articulate at any time the purpose or rationale supporting its classification." Id. (citations omitted). To be sure, the legislative classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Id. (citations omitted). Courts cannot subject a reasonably hypothesized state of facts to the crucible of "courtroom factfinding" and must even accept "rational speculation unsupported by evidence or empirical data." Id. at 309, 645 S.E.2d at 460 (citations omitted). And the Commonwealth "has no obligation to produce evidence to sustain the rationality" of the challenged classification because the "burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." Id. at 308-09, 645 S.E.2d at 460 (citations omitted).

Applying this standard, we find the current habitual offender statute free of any constitutional infirmity under the equal protection and due process clauses of the Fourteenth Amendment.[2] The only conceptual disparity identified by Lilly involves treating recidivist drivers declared habitual offenders prior to July 1, 1999, differently than drivers convicted of recidivist offenses on or after July 1, 1999. The 1999 partial repeal, she asserts, created "a situation where two people identically situated — but for time — are treated entirely differently with no discernible state purpose." Appellant's Br. at 4.

---

[2] In cases challenging disparities in statutory criminal penalties, "an argument based on equal protection essentially duplicates an argument based on due process." Chapman v. United States, 500 U.S. 453, 465 (1991). As a result, we need not separate the concepts for purposes of addressing Lilly's argument in this case.

The underlying premise of Lilly's argument is little more than a broadside, albeit unintended, against *any* sequential changes in recidivism laws that distinguish between predicate offenses committed before and recidivist offenses committed after each statutory change. Under Lilly's approach, no substantive amendments could ever be enacted to recidivism statutes because such amendments would, of necessity, divide offenders into before and after categories. See generally McIntosh v. Commonwealth, 213 Va. 330, 330-33, 191 S.E.2d 791, 792-94 (1972); Salama v. Commonwealth, 8 Va. App. 320, 321-24, 380 S.E.2d 433, 434-35 (1989). To be sure, consistent with Lilly's argument, it could just as well be said that all statutory changes are irrational because they treat people differently on no other basis than the fortuity of time.

Lilly disclaims these logical extensions of her argument, focusing instead on the more discrete disparity existing between drivers declared to be habitual offenders prior to 1999 and those not declared habitual offenders but who committed the same offenses on or after 1999. Even if we allow Lilly this conceptual limitation on her argument, no constitutional infirmity arises. The distinction drawn by the General Assembly rationally balances the need to reform the cumbersome civil administrative process of declaring a driver to be an habitual offender with the corresponding need to retain the benefits of the old system. The going-forward strategy of the 1999 amendments more tightly calibrated future recidivism punishments to underlying offenses. The compromise also avoided the possibility of *ex post facto* concerns that might arise if drivers declared habitual offenders before 1999 were later reclassified under specific recidivism statutes authorizing a different range of punishments than the mandatory minimums always required by Code § 46.2-357.

True, the ultimate balance of these competing concerns produced an asymmetry of sorts. But as long as a legislative classification "has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not with mathematical nicety or because in

practice it results in some inequality.'" Dandridge v. Williams, 397 U.S. 471, 485 (1970) (citation omitted). "The problems of government," after all, "are practical ones and may justify, if they do not require, rough accommodations" that necessarily defy perfect or, for that matter, considerably less-than-perfect, legal symmetries. Id. Our judicial role "is only to ascertain that a rational basis exists for the challenged distinction, not whether it is the best or only choice." Gray, 274 Va. at 311, 644 S.E.2d at 461. That conclusion is all the more true in cases, like this one, involving legislative "specification of punishments" — matters ordinarily understood as "peculiarly questions of legislative policy." Id. (quoting Gregg v. Georgia, 428 U.S. 153, 175-76 (1976) (citations omitted)).

*Virginia Constitution*. The corresponding provisions of the Virginia Constitution go no further than their federal counterparts. "We have 'consistently held that the protections afforded under the Virginia Constitution are co-extensive with those in the United States Constitution.'" Rowley v. Commonwealth, 48 Va. App. 181, 187 n.2, 629 S.E.2d 188, 191 n.2 (2006) (citations omitted). The federal equal protection and due process principles, therefore, subsume any analysis of parallel provisions in the Virginia Constitution.

Equally so, the prohibitions against "special, private, or local law" found in Article IV, §§ 14-15, of the Virginia Constitution add nothing to the minimum rationality test employed by longstanding due process and equal protection doctrines. Virginia courts "apply the so-called 'rational basis' test" when testing the constitutionality of legislation "under due process, equal protection, *and* special legislation provisions." Willis v. Mullett, 263 Va. 653, 659, 561 S.E.2d 705, 709 (2002) (emphasis added). "The constitutional provisions prohibiting special legislation do not proscribe classifications." Jefferson Green Unit Owners Ass'n v. Gwinn, 262 Va. 449, 459, 551 S.E.2d 339, 344 (2001) (citation omitted). Instead, the special laws prohibitions recognize "the necessity for and the reasonableness of classification are primarily questions for

the legislature. If any state of facts can be reasonably conceived, that would sustain it, that state of facts at the time the law was enacted must be assumed." Id. at 459, 551 S.E.2d at 345 (citations omitted). To prevail, the challenger must prove the classification to be without a "reasonable basis" and "essentially arbitrary," id. (citation omitted) — a burden of proof Lilly cannot shoulder in this case.[3]

B.     DISCUSSING THE MANDATORY MINIMUM SENTENCE
AND 1999 PARTIAL REPEAL DURING THE GUILT PHASE

Lilly also claims the trial court denied her an impartial "jury of her peers" in violation of both the United States and Virginia Constitutions. See U.S. Const. amend. XI; Va. Const. art. I, § 8. At the time they found her guilty, Lilly reasons, the jurors did not know of the mandatory minimum sentences required by the habitual offender statute. Nor did they know that the 1999 partial repeal limited future prosecutions under the statute only to those drivers who were declared habitual offenders prior to July 1, 1999. We reject both arguments because, by raising matters having nothing to do with Lilly's criminal culpability, they amount to little more than an effort at inviting jury nullification on the issue of guilt.

A juror's sworn obligation is to follow the law, not question it. While we are not naïve enough to think jury nullification never occurs (it "undoubtedly" does in some cases, Walls v. Commonwealth, 38 Va. App. 273, 282, 563 S.E.2d 384, 388 (2002)), no principle of constitutional import entitles "a party to encourage such behavior," id., or to even imply its

_____

[3] See also Pulliam v. Coastal Emergency Servs., Inc., 257 Va. 1, 18-19, 509 S.E.2d 307, 317 (1999) (explaining that, under the special laws prohibitions, "the necessity for and the reasonableness of classification are primarily questions for the legislature. If any state of facts can be reasonably conceived . . . that would sustain it, that state of facts at the time the law was enacted must be assumed." (citation omitted)); Newport News v. Elizabeth City County, 189 Va. 825, 842, 55 S.E.2d 56, 65 (1949) ("If the statute applies throughout the State and to all persons and property within the class specified and the classification is reasonable and not arbitrary, such a statute is not special but general." (citation omitted)).

legitimacy.  Consequently, defendants cannot use *voir dire*,[4] witness testimony,[5] counsel's

argument,[6] or jury instructions to comment on legal propositions wholly unrelated to the specific

factual issues before the jury.[7]  When decoupled from specific factfinding issues, "abstract

propositions of law do little to help and much to mystify a jury."  Newton v. Commonwealth, 29

Va. App. 433, 458, 512 S.E.2d 846, 858 (1999) (citation omitted).  Courts similarly reject efforts

by both prosecutors and defense counsel to inject issues of punishment into the guilt phase of a

jury trial.[8]  Lilly's repeated attempts to do so in this case were correctly resisted by the trial

court.

Lilly further contends that the General Assembly has gone too far in its "quest for

sentencing control" by enacting mandatory minimum sentences that impermissibly remove "any

judicial consideration or evaluation of the matters historically considered by the courts."

Appellant's Br. at 12.  She sees mandatory minimum sentences in general, like the habitual

---

[4] See Smith v. Commonwealth, 40 Va. App. 595, 601, 580 S.E.2d 481, 484 (2003) ("*[V]oir dire* should not provide an opportunity for the parties to express personal opinions or to justify their theories regarding the case [and] . . . is not an opportunity for attorneys to testify or argue to the jury."); see, e.g., Commonwealth v. Hill, 264 Va. 315, 319, 568 S.E.2d 673, 675 (2002); LeVasseur v. Commonwealth, 225 Va. 564, 581, 304 S.E.2d 644, 653 (1983); Barrette v. Commonwealth, 11 Va. App. 357, 361-62, 398 S.E.2d 695, 697 (1990).

[5] See generally 1 McCormick on Evidence § 12, at 62-63 (Kenneth S. Broun ed., 6th ed. 2006) (stating witnesses are not allowed to comment on questions of law because at trial "there is only one legal expert — the judge" (citation omitted)); Charles E. Friend, The Law of Evidence in Virginia § 17-3, at 642 (6th ed. 2003); see, e.g., Robertson v. Commonwealth, 12 Va. App. 854, 856, 406 S.E.2d 417, 418 (1991).

[6] See generally Ronald J. Bacigal, Virginia Criminal Procedure § 17:5, at 468 (2006); see, e.g., Hutchins v. Commonwealth, 220 Va. 17, 20, 255 S.E.2d 459, 461 (1979).

[7] See Marine Dev. Corp. v. Rodak, 225 Va. 137, 143, 300 S.E.2d 763, 767 (1983) (recognizing jury instructions should not include "statements of abstract propositions entirely extraneous to the issues" that must be decided by the jury because such statements "have a tendency to confuse, rather than to clarify" the issues (citation omitted)).

[8] See, e.g., Commonwealth v. Hill, 264 Va. 315, 319, 568 S.E.2d 673, 676 (2002); Ford v. Commonwealth, 48 Va. App. 262, 270, 630 S.E.2d 332, 336 (2006); Walls, 38 Va. App. at 282, 563 S.E.2d at 388.

offender statute in particular, as violations of "due process" that should be judicially declared invalid.  Id.

Lilly's appeal to tradition and history, however, unknowingly produces the opposite conclusion.  Truth be told, American juries historically exercised little, if any, discretionary control over criminal sentences:

> In the early days of the Republic, when imprisonment had only recently emerged as an alternative to the death penalty, confinement in public stocks, or whipping in the town square, the period of incarceration was generally prescribed with specificity by the legislature.  Each crime had its defined punishment.

United States v. Grayson, 438 U.S. 41, 45 (1978); Chapman v. United States, 500 U.S. 453, 467 (1991) (noting "[d]eterminate sentences were found in this country's penal codes from its inception").  The historic norm for the jury was to determine only guilt or innocence, leaving the court alone to fix the punishment consistent with legislatively mandated sentences.  Later statutory reforms produced wide sentencing ranges within which trial judges could exercise individualized discretion.  See Grayson, 438 U.S. at 45-46.  Some states, like Virginia, authorized juries to ascertain a specific felony sentence within the statutory range, subject to the trial court's power of suspension.  See generally Ronald J. Bacigal, Virginia Criminal Procedure §§ 19:1, 19:5 (2006); John L. Costello, Virginia Criminal Law & Procedure § 63.3-2 (3d ed. 2002 & Supp. 2006).

The legislative development of the mandatory minimum sentence, however, produced a floor below which no judge or jury could go.  A trial court's authority to depart downward below a mandatory minimum is "nonexistent," Mouberry v. Commonwealth, 39 Va. App. 576, 585, 575 S.E.2d 567, 571 (2003), because the legislative purpose was to divest trial judges and juries of "all discretion" to sentence below the threshold minimum, In re Commonwealth of Virginia, 229 Va. 159, 163, 326 S.E.2d 695, 697 (1985).  Given this history, we find no basis for Lilly's

characterization of mandatory minimum sentences as a legislative usurpation of a historically unique judicial function. Just the opposite is true: The development of mandatory minimum sentences reflects the traditional legislative role in creating statewide uniformity, at least at the lower end of the punishment scale, for all sentences for the specified crimes. This can hardly be a due process violation, given that the General Assembly "has the power to define criminal punishments without giving the courts any sentencing discretion." Chapman, 500 U.S. at 467 (citing Ex parte United States, 242 U.S. 27, 41-42 (1916)).

III.

In sum, we reject Lilly's constitutional challenges to the 1999 partial repeal of the habitual offender statute and her claimed right to advise the jury during the guilt phase of her trial about the partial repeal and the mandatory minimum sentence required by the statute. We thus affirm her conviction for driving a vehicle after having been declared an habitual offender, a second or subsequent offense, in violation of Code § 46.2-357(B)(3).

Affirmed.