COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Russell and AtLee
Argued by videoconference

**PUBLISHED**

NORMAN L. BLOWE, JR.

OPINION BY
v.  Record No. 0680-19-4  JUDGE WESLEY G. RUSSELL, JR.
OCTOBER 27, 2020

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
Clifford L. Athey, Jr., Judge[1]

David L. Parker (David L. Parker, P.C., on brief), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


A jury found appellant, Norman L. Blowe, Jr., guilty of one count of production of child

pornography, first offense, in violation of Code § 18.2-374.1; one count of production of child

pornography, second or subsequent offense, in violation of Code § 18.2-374.1; one count of taking

indecent liberties with a child by a person in a custodial or supervisory relationship in violation of

Code § 18.2-370.1; one count of possession of child pornography, first offense, in violation of

Code § 18.2-374.1:1; and twenty counts of possession of child pornography, second or subsequent

offense, in violation of Code § 18.2-374.1:1.[2]  In this appeal, Blowe contends that the trial court

"erred in denying the motion for investigation of jury tampering, as a jury question regarding

potential sentences was answered by the clerk instead of being given to the presiding judge" and

---

[1] Judge Athey presided over appellant's trial and sentencing prior to his elevation to the
Court of Appeals on September 1, 2019.  Judge Athey played no role in the consideration or
disposition of this appeal.

[2] The jury acquitted Blowe of six additional charges.

that as a result he is entitled to a new sentencing proceeding.[3] For the following reasons, we affirm the judgment of the trial court.

## BACKGROUND

Because the jury's guilt determinations are not before us in this appeal, we do not detail the facts of the underlying offenses. Rather, we only summarize facts pertinent to Blowe's claim of error during the sentencing proceeding. In doing so, "we view the record in the light most favorable to the Commonwealth because it was the prevailing party below." Delp v. Commonwealth, 72 Va. App. 227, 230 (2020) (citing Huguely v. Commonwealth, 63 Va. App. 92, 110 (2014)).

After convicting Blowe of the above-stated offenses, the jury heard evidence and argument regarding sentencing. Before sentencing deliberations began, the trial court gave the jury instructions related to sentencing, including the applicable sentencing ranges for each of the offenses for which the jury had convicted Blowe. Blowe did not object to the sentencing instructions in the trial court and does not argue that the instructions did anything other than correctly state the applicable law.

Regarding the conviction for production of child pornography, first offense, in violation of Code § 18.2-374.1, the members of the jury were instructed to "fix his punishment" for that offense at "[a] specific term of imprisonment, but not less than (3) three years nor more than (30) thirty years." Regarding the conviction for production of child pornography, second offense, in violation

---

[3] In his petition for appeal, Blowe asserted five assignments of error, four of which asserted grounds for setting aside the findings of guilt. A judge of this Court denied the petition as to all five assignments of error. Blowe v. Commonwealth, No. 0680-19-4 (Jan. 9, 2020). Blowe, pursuant to Rule 5A:15, sought review of the denial by a three-judge panel. The three-judge panel affirmed the denial of the four assignments of error that challenged the guilt determinations, but granted the petition on Blowe's challenge to the sentencing proceeding. Blowe v. Commonwealth, No. 0680-19-4 (Apr. 24, 2020). Accordingly, the only issue before us in this appeal is the alleged error during the sentencing proceeding.

of Code § 18.2-374.1, they were instructed to "fix his punishment" for that offense at "[a] specific term of imprisonment, but not less than (10) ten years nor more than (30) thirty years."[4]  Regarding the conviction for taking indecent liberties with a child by a person in a custodial or supervisory relationship in violation of Code § 18.2-370.1, they were instructed to "fix [his] punishment" for that offense at:

> (1)  A specific term of imprisonment, but not less than one (1) year nor more than five (5) years; or
>
> (2)  Confinement in jail for a specific time, but not more than twelve (12) months; or
>
> (3)  A fine of a specific amount, but not more than $2,500.00 or
>
> (4)  Confinement in jail for a specific time, but not more than twelve (12) months, and a fine of a specific amount, but not more than $2,500.00.

Regarding the conviction for possession of child pornography, first offense, in violation of Code § 18.2-374.1:1, they were instructed to "fix [his] punishment" for that offense at:

> (1)  A specific term of imprisonment, but not less than one (1) year nor more than (5) five years; or
>
> (2)  Confinement in jail for a specific time, but not more than twelve (12) months; or
>
> (3)  A fine of a specific amount, but not more than $2,500.00; or
>
> (4)  Confinement in jail for a specific time, but not more than twelve (12) months and a fine of a specific amount, but not more than $2,500.00.

Regarding the twenty convictions for possession of child pornography, second or subsequent offense, in violation of Code § 18.2-374.1:1, they were instructed to "fix [his] punishment" for each of those offenses at:

---

[4] The respective mandatory minimum sentences of three and ten years for the violations of Code § 18.2-374.1 were applicable because the victim was between the ages of fifteen and eighteen and Blowe was more than seven years older than the victim.  Code § 18.2-374.1(C2).

(1) A specific term of imprisonment, but not less than one (1) year nor more than (10) ten years; or

(2) Confinement in jail for a specific time, but not more than twelve (12) months; or

(3) A fine of a specific amount, but not more than $2,500.00; or

(4) Confinement in jail for a specific time, but not more than twelve (12) months, and a fine of a specific amount, but not more than $2,500.00.

Thus, consistent with the instructions and the mandatory minimum sentences specified in Code § 18.2-374.1(C2), the jury was required to fix Blowe's punishment at a minimum of thirteen years in prison but had the option of adding to that total an additional 257 years of confinement in a penitentiary or other combinations of jail sentences and/or fines.

Having been so instructed, the jury began deliberating Blowe's sentence. A question arose among the members of the jury regarding the sentences for the two convictions for production of child pornography. Specifically, they asked the courtroom clerk if they could "choose 'nothing' for the second offense." The clerk did not inform the parties or the trial court of the question, and rather than refer the question to the presiding judge, the clerk responded to the jury that they had to sentence Blowe consistent with the instructions that the trial court had given them. The jury resumed deliberations.

The jury returned a sentencing verdict consistent with the instructions. On the conviction for production of child pornography, first offense, the jury set Blowe's punishment at the mandatory minimum of three years in prison. On the conviction for production of child pornography, second or subsequent offense, the jury set Blowe's punishment at the mandatory minimum of ten years in prison. On the conviction for taking indecent liberties with a child by a person in a custodial or supervisory relationship, the jury elected to impose no prison or jail time; rather, the jury set Blowe's punishment at a fine of $2,500. Similarly, for the twenty-one

- 4 -

convictions for possession of child pornography, the jury elected to impose no prison or jail time; rather, the jury set Blowe's punishment at a fine of $100 for each such conviction for a total punishment of $2,100 in fines for the possession of child pornography convictions. All told, the jury fixed Blowe's punishment for all of the convictions at thirteen years in prison and $4,600 in fines.

Before the jury was dismissed, the members were polled to confirm that the sentences described represented their individual and collective verdicts. Each member of the jury confirmed that the sentences read aloud accurately reflected the sentencing verdicts they had reached. The trial court then dismissed the jury, ordered a presentence report, and set March 29, 2019, as the date for the sentencing hearing.

After the jury had been dismissed but before the scheduled sentencing hearing, a member of the jury wrote a letter to the trial court informing it of the exchange between the jury and the clerk; another juror subsequently wrote a letter to the Commonwealth's Attorney.[5] Upon

---

[5] As noted, the trial court was unaware of the exchange between the jury and the courtroom clerk while the jury was serving. The first juror described the exchange as follows:

> Mr. Blowe was found guilty of a first offense of production of child pornography, with the minimum sentence of three years in prison. He was also found guilty of a second offense of production of child pornography, in which the minimum sentence is ten years in prison. When the jury heard the sentencing guidelines for the second offense, we were sickened to our stomachs. In fact, we asked the clerk who brought us the sentencing papers if we could choose "nothing" for the second offense; she looked at us as if we were crazy and demanded we select a sentence. To say the jury was distraught and felt deceived is an understatement.

After this juror's letter became publicly known, the second juror, in the correspondence to the Commonwealth's Attorney, explained that

> the jury foreman decided to ask the question of what if we want to give no time to Mr. Blowe on the charge of second or subsequent count of production of child. [The courtroom clerk] explained that the judge had already explained the sentencing [ranges] and that

learning of the correspondence from the first juror about the jury's communications with the clerk, Blowe filed a motion requesting an investigation of jury tampering.[6] In his written motion, Blowe asserted that "[i]t is impermissible for a clerk to answer the juror's questions and not notify the court and counsel" and argued that "[t]herefore, the trial court has an affirmative duty to investigate the charges and to ascertain whether, as a matter of fact, the jury was improperly influenced . . . by the clerk's interjection of *legal advice* during deliberations." (Emphasis added). Blowe also contended in his motion that any jury tampering was "deemed presumptively prejudicial[,]" and alleged "but for the clerk's advice, the jury would NOT have sentenced the defendant to ten years minimum mandatory."

In response, the Commonwealth accepted the allegations in the juror's letter as true, but argued that "the clerk did not convey any additional facts; opinions regarding the guilt or innocence of the defendant; comment on the law; or comment on the evidence or the testimony presented during the trial. Instead, it was a response to a question regarding a procedural aspect of jury deliberation." Thus, reasoned the Commonwealth, there was no probability that external evidence influenced the jury and the *ex parte* communication was not presumptively prejudicial.

In lieu of the scheduled sentencing hearing, the trial court conducted a hearing on Blowe's post-trial motion. Both parties referenced the two jurors' letters, and Blowe requested they be made part of the record and considered by the trial court. Blowe essentially restated the arguments contained in his motion, arguing that the sentencing question "should have gone to the [trial c]ourt" not the clerk and that "both counsel and the [d]efendant [should] have been given

---

the [ranges] were what was printed on the sentencing form and there was no option to "write in" a choice of sentencing.

[6] In his motion, Blowe raised additional issues seeking to set aside the jury's findings of guilt; these issues were unrelated to the exchange between the clerk and jury. Because the clerk/jury communication issue is the only issue before us in this appeal, we do not address any of the other issues Blowe raised in the trial court.

an opportunity to advise the [trial c]ourt how it should be responded to and the [trial c]ourt would then make a decision and advise the [c]lerk how to go back and advise the jury." In response to a question from the trial court, Blowe agreed that, if he were to prevail on his arguments regarding the clerk's communication with the jury during the sentencing phase, the remedy would be to empanel a new jury for resentencing and that he would not be entitled to a new trial on the question of guilt.

Referencing Commonwealth v. Juares, 274 Va. 812 (2007), the trial court responded to the motion by noting that Blowe "is correct that there is a presumption that in particular cases that *ex parte* contact between individuals and a jury would create a presumption that would then have to be overcome by the Commonwealth."[7] The trial court accepted that the events transpired as Blowe alleged,[8] but nevertheless then concluded that he had suffered no prejudice from the clerk's comment to the jury in this case. The trial court explained that, had the question been brought to it, it "would have given the same exact answer" as the clerk had given. In addition, the trial court noted that the General Assembly sets the range of punishment for criminal offenses and that Blowe had been "given the minimum [penitentiary] sentence that the[ jury was] permitted to give [him] under the laws of the Commonwealth of Virginia and the laws that have been created by the General Assembly[,]" and thus, had suffered no prejudice.

As an additional basis for its ruling, the trial court characterized any potential problem as nothing more than "harmless error[,]" noting that the jury had given Blowe the minimum amount of incarceration allowed and that, at most, success on this argument would entitle him only to a

---

[7] Although the trial court stated at the hearing that *ex parte* contact with jurors was presumptively prejudicial, it later made contradictory statements. As Blowe notes, there were times during the hearing when the trial court said that the contact in this case was "not presumptively prejudicial." We address the discrepancy in more detail, *infra*.

[8] Blowe acknowledged during oral argument in this Court that, in making its ruling, the trial court relied on the facts as set forth by Blowe.

new sentencing proceeding in which he could fare no better but would "face a great deal of additional potential time."

Consistent with these conclusions, the trial court denied Blowe's motion as it related to the clerk/jury communication issue and reset the matter for a sentencing hearing. At that hearing, the trial court imposed the jury's sentences of the mandatory minimum of three years' imprisonment for the violation of Code § 18.2-374.1, first offense, and the mandatory minimum of ten years' imprisonment for the violation of Code § 18.2-374.1, second or subsequent offense. The trial court also imposed the $100 fines the jury had fixed for the twenty-one violations of Code § 18.2-374.1:1. The trial court did not impose the $2,500 fine for the violation of Code § 18.2-370.1, choosing instead to impose a reduced $250 fine for that offense.[9]

This appeal followed.

ANALYSIS

The Sixth Amendment to the United States Constitution guarantees to a criminal defendant the right to have his case decided by an "impartial jury[.]" Implicit in this guarantee is a defendant's right to have the jury decide the case based only upon what occurs during the trial and on the judge's instructions as given in open court and not based on any prejudicial information provided by third parties outside of the normal trial process. See Scott v. Commonwealth, 11 Va. App. 516, 520 (1990) (*en banc*). Here, Blowe claims that the clerk's communication with the jury constituted such prejudicial information impermissibly provided to the jury outside of the trial process.

Such an argument presents a "mixed question[] of law and fact[,]" Rankin v. Commonwealth, No. 1671-16-1, at *15 (Va. Ct. App. Apr. 24, 2018) (citing United States v.

---

[9] The trial court did not explain why it reduced the fine the jury had fixed for the violation of Code § 18.2-370.1.

- 8 -

Basham, 561 F.3d 302, 319 (4th Cir. 2009)), aff'd on other grounds, 297 Va. 199 (2019),[10] and thus, is subject to *de novo* review in this Court, Hodges v. Commonwealth, 64 Va. App. 687, 693 (2015). In conducting this review, however, we recognize that any underlying factual determinations "are best determined by the trial court[,]" and thus, the trial "court's factual findings are entitled to great weight." Rankin, No. 1671-16-1, at *15 (internal quotation marks and citation omitted).

A jury receiving information about matters before it outside of the normal trial process raises substantial concerns about the integrity of a jury's verdict. A possibility that a jury "might have been prejudiced" by such a communication leaves its verdict "open to serious doubt and the verdict should be set aside[.]" Thompson v. Commonwealth, 193 Va. 704, 715 (1952). Given the significant threat posed to the integrity of a jury's verdict by such *ex parte* communications, the mere fact of such a communication related to an issue before the jury gives rise to a presumption of prejudice. As the Virginia Supreme Court, relying on decisions of the United States Supreme Court, has held,

> any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.

Juares, 274 Va. at 816 (quoting Remmer v. United States, 347 U.S. 227, 229 (1954)). This presumption, however, is rebuttable if the Commonwealth can "establish[] that the 'contact with the juror was harmless to the defendant.'" Id. (quoting Remmer, 347 U.S. at 229).

---

[10] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." Otey v. Commonwealth, 61 Va. App. 346, 350 n.3 (2012) (citing Rule 5A:1(f)).

Here, the trial court found that the communication between the clerk and the jury had occurred as alleged by Blowe: that is, the clerk gave an *ex parte* response to the jurors' question of whether they could deviate from the sentencing range set out in the jury instructions, telling them that they had to sentence consistent with the instructions. The trial court correctly concluded that the clerk should not have taken it upon herself to answer the question, but rather, should have brought the question to the trial court so that the trial court could have answered it after informing the parties of the question. Given these findings by the trial court, Blowe established that there was an impermissible *ex parte* communication with the jury about sentencing, the very matter that was then "pending before the jury[.]" Id. (quoting Remmer, 347 U.S. at 229). Accordingly, the communication was "presumptively prejudicial." Id. (quoting Remmer, 347 U.S. at 229).[11]

Blowe's entitlement to the presumption, however, does not end the analysis. The applicability of the "presumption of prejudice . . . does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict?" United States v. Olano, 507 U.S. 725, 739 (1993). As a result of the presumption, the Commonwealth bore the heavy burden

---

[11] As noted above, Blowe makes much of the trial court's statement from the bench that this is not a case where the contact was "presumptively prejudicial." Blowe's emphasis on the trial court's statement to this effect, while understandable, is misplaced. Unlike Blowe, we "do 'not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied.'" Vay v. Commonwealth, 67 Va. App. 236, 253 (2017) (quoting Yarborough v. Commonwealth, 217 Va. 971, 978 (1977)). Here, as noted above, the trial court correctly stated at one point that *ex parte* contacts with jurors are presumptively prejudicial, which suggests it merely misspoke when it added the word "presumptively" in detailing its conclusion that Blowe had suffered no prejudice. Furthermore, the Commonwealth did not contest and the trial court accepted that the underlying facts regarding the clerk's contact with the jury occurred as alleged by Blowe. With no dispute as to the underlying facts, the question of legal prejudice is one of law. See Rankin, No. 1671-16-1, at *15 (citing Bristol v. Commonwealth, 272 Va. 568, 573 (2006)). Accordingly, the trial court's use of the word "presumptively" while describing its conclusion that Blowe suffered no prejudice has no effect on our review of the issue because we owe no deference to the trial court's legal conclusions. See, e.g., Sierra v. Commonwealth, 59 Va. App. 770, 776 (2012) (recognizing that appellate courts do not defer to the legal conclusions of trial courts).

- 10 -

of "establish[ing] that the 'contact with the juror was harmless to the defendant.'" Juares, 274

Va. at 816 (quoting Remmer, 347 U.S. at 229). The Commonwealth met this burden in this case.

Although the clerk's conduct was improper, it is important to recognize what her response to the jury was not. It was not a communication that "convey[ed] any additional facts or opinions" to the jury and was not a "comment on . . . the evidence or the testimony presented during the trial." Id. Although it occurred outside of the normal trial process, the communication, that the jury was required to follow the trial court's instructions regarding sentencing, was not an incorrect statement of the law. The clerk's statement was wholly consistent with the trial court's instructions and, as Blowe conceded in oral argument in this Court, was an accurate statement of the law. Furthermore, because the communication occurred during the sentencing phase, it had no effect on the jury's determination that Blowe was guilty of the offenses because that determination already had been made.

The possibility that the communication even theoretically could have prejudiced Blowe is further diminished by the findings of the trial court. Specifically, the trial court stated that, if the question had been brought to its attention as would have been proper, it "would have given the same exact answer." Thus, we know to a certainty that the clerk provided no information or instruction to the jury other than what the trial court would have given had proper procedures been followed.

The jury's sentencing verdicts themselves further demonstrate that Blowe was not prejudiced by the clerk's improper communication with the jury. There is no dispute that the trial court's instructions accurately set forth the sentencing ranges the General Assembly established for the offenses for which Blowe was convicted. Given the mandatory minimum punishments established by Code § 18.2-374.1(C2), the jury *had* to sentence Blowe to a minimum of thirteen years' incarceration for the violations of Code § 18.2-374.1, that is, three

years on the first offense and ten years on the second or subsequent offense. The jury had the option to sentence him to up to sixty years' incarceration for those two convictions and an additional 210 years' incarceration on the remaining twenty-two convictions. The fact that the jury set his term of incarceration at the minimum allowed by law all but conclusively establishes that Blowe suffered no prejudice from the clerk's *ex parte* statement to the jurors that they had to follow the sentencing instructions given by the trial court.[12]

Finally, we note that Blowe himself has been unable to identify any legally cognizable prejudice that he even theoretically may have suffered. His only attempt to do so is to argue that, without the clerk's communication, there was the "possibility that the jurors would not have been able to reach a unanimous decision regarding the sentence . . . ." In short, he argues that the clerk's answer may have stopped an individual juror or the collective jury from engaging in nullification of the mandatory minimum sentences established by Code § 18.2-374.1(C2).

The possibility of nullification can never be legally cognizable prejudice because Virginia law does not permit juries to engage in the nullification of mandatory minimum sentences. When the General Assembly adopts a mandatory minimum sentence as it did in enacting Code § 18.2-374.1(C2), it establishes "a floor below which no judge or *jury* c[an] go." Lilly v. Commonwealth, 50 Va. App. 173, 187 (2007) (emphasis added). Thus, neither a trial court nor a jury has any "authority to [sentence] below a mandatory minimum[.]" Id. at 187-88.

---

[12] We recognize that although the jury imposed the smallest period of incarceration allowed, it could have imposed smaller fines than it recommended for the convictions for the violations of Code § 18.2-370.1 and Code § 18.2-374.1:1. The maximum fine for each of the twenty-two convictions is $2,500, so the maximum fines that the jury could have imposed totaled $55,000; nevertheless, the jury also could have recommended less than the $4,600 in fines for those offenses, perhaps setting the fine at $1 for each conviction. Although we recognize this theoretical possibility, it does not change our prejudice analysis. The communication between the clerk and the jury did not address fines or even the offenses for which the jury ultimately sought to impose fines. Rather, the question related only to the mandatory minimum periods of incarceration for the convictions for violating Code § 18.2-374.1. Furthermore, Blowe did not argue in the trial court nor has he argued on appeal that the clerk's communication had any effect on the fines set by the jury.

As a result, a jury cannot "engage in nullification in the sentencing phase and [i]s constrained to render a sentencing verdict that complie[s] with the mandatory sentence[s]" established by the General Assembly. Commonwealth v. Greer, 63 Va. App. 561, 575 (2014).

If a jury ignores its legal duty to follow the trial court's instructions and attempts to nullify a mandatory minimum sentence set by the General Assembly, a defendant receives no benefit. In such situations, a trial "court [i]s obligated to reject the jury's" attempt at nullification and must "impanel a new jury to determine punishment within the limits established by the legislature for the crime for which the original jury found the defendant guilty." Id. at 579. Accordingly, even if we accept Blowe's conjecture that, absent the clerk's communication, the jury would have ignored the trial court's instructions and refused to impose the minimum sentence, we know he would have received no benefit. Rather, the trial court would have been required to seat a new jury, or juries, on the issue of sentencing only and continue doing so until a jury imposed sentences that included the mandatory minimum sentences of thirteen years for the violations of Code § 18.2-374.1 and may have imposed combined sentences of 270 years in prison for all of the convictions.[13] In short, regardless of the clerk's statement, there is no state of the world in which Blowe would not be sentenced to at least thirteen years in prison and many states of the world in which he would have been sentenced to much more than that. Given that the jury sentenced him to the absolute minimum amount of incarceration possible under the law,

_____

[13] We note that, as he acknowledges, if Blowe were to have prevailed on this appellate argument, the remedy would have been a new sentencing hearing, but not a new determination of guilt or innocence. Accordingly, if he had prevailed, Blowe similarly would have faced a new jury that would have been required to sentence him to at least thirteen years in prison but could have sentenced him to up to 270 years in prison. Thus, prevailing on this appellate issue would not have reduced Blowe's prison time, but very well may have increased it.

- 13 -

he was not prejudiced by the clerk's communication with the jury.[14]  Accordingly, we affirm the judgment of the trial court.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

<u>Affirmed.</u>

---

[14] In concluding that Blowe was not prejudiced by the clerk's communication with the jury in this case, we do not endorse the clerk's conduct.  As the trial court recognized, the clerk should not have answered the jury's question, but should have brought the question to the trial court for the trial court to answer after informing the parties of the question.