**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-4056**

---

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

ORLANDO ROOSEVELT ADKINS, a/k/a O, a/k/a Unc, a/k/a Lando,

Defendant – Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.  Jamar Kentrell Walker, District Judge.  (4:22–cr–00020–JKW–LRL–1)

---

Submitted:  May 13, 2025                    Decided:  October 21, 2025

---

Before DIAZ, Chief Judge, and RICHARDSON and QUATTLEBAUM, Circuit Judges.

---

Affirmed by unpublished opinion.  Chief Judge Diaz wrote the opinion, in which Judge Richardson and Judge Quattlebaum joined.

---

**ON BRIEF:**  Patricia A. René, RENÉ LAW FIRM, Williamsburg, Virginia, for Appellant. Peter G. Osyf, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Chief Judge:

Orlando Adkins owned and operated Elite Customs, an automotive repair shop in Hampton, Virginia. After a three-year investigation, law enforcement learned that Elite Customs was, in truth, a front for a drug distribution conspiracy. A grand jury indicted Adkins for running that conspiracy, and a petit jury convicted him of the same.

On appeal, Adkins challenges his conviction and sentence. Because substantial evidence supports Adkins's conviction and his sentence is reasonable under the Guidelines, we affirm.

I.

The government prevailed before the district court, so we recount the facts "in the light most favorable to [it]." *United States v. Haas*, 986 F.3d 467, 477 (4th Cir. 2021).

A.

Adkins and a man named Charles Bibbs owned an automotive repair shop called Elite Customs.[1] Sometime in 2016 or 2017, Adkins and his childhood friend, Kenneth Otey, started dealing cocaine and heroin out of Elite Customs. Otey provided the drugs, which he and Adkins would sell together.

---

[1] Bibbs was the nominal owner of Elite Customs before transferring ownership to Adkins's girlfriend. But regardless of who owned Elite Customs on paper, Adkins was always in charge.

Also in 2017, two anonymous tipsters told the police that Adkins and Bibbs were selling large quantities of cocaine, heroin, and marijuana out of the shop. Based on these tips, law enforcement launched an investigation.

Meanwhile, Adkins expanded his operation by introducing Otey to one Terrell Jenkins. Jenkins became the seller of the group. Otey procured heroin for Adkins, Adkins would give the heroin to Jenkins, then Jenkins would sell it and split the profits with the rest of the group.

Adkins and his crew eventually branched out to harder drugs. By this point, law enforcement had wiretapped the group members' phones. On one intercepted phone call, Otey informed Adkins that he had laced heroin with fentanyl to make the resulting compound stronger. After Otey expressed concern that the combination could be lethal, Adkins told Jenkins to "cut" the drugs (that is, dilute them) before distribution.

In early 2019, Adkins roped in another acquaintance, Charles Chambers. Chambers had been selling drugs on his own. One day at Elite Customs, Adkins asked Chambers whether he "want[ed] to do more" before pulling a "kilo of cocaine" out of his desk. J.A. 553–55. Adkins gave Chambers four and one-half ounces of cocaine to "start [him] off" in the venture, and Chambers agreed to join the scheme. J.A. 556.

Yet another Adkins acquaintance, Antron Rowland, served as Adkins's marijuana source. Throughout 2020 and 2021, the two exchanged phone calls and text messages about buying and selling the drug. In October 2020 and March 2021, Adkins sold approximately three and a half pounds of marijuana, all supplied by Rowland.

B.

The government charged Adkins with conspiring to distribute and to possess with intent to distribute cocaine, fentanyl, heroin, and marijuana (Count 1); maintaining a drug-involved premises (Count 10); distributing marijuana (Count 11); and using a communication facility in furtherance of drug trafficking (Counts 14, 15, and 18). The remaining counts of the indictment charged Jenkins, Rowland, and several others involved in the drug operation.

Adkins pleaded guilty without a plea deal to Counts 10, 11, 15, and 18, and the government voluntarily dismissed Count 14. The government introduced a stipulation of facts into the record. In that stipulation, Adkins admitted that he knowingly and intentionally made Elite Customs available for marijuana distribution. Adkins also admitted that he worked with Rowland to sell three and a half pounds of marijuana at Elite Customs.

That left Count 1, which Adkins took to trial. The government read the stipulation of facts to the jury. At the close of the government's evidence, Adkins moved for a judgment of acquittal, *see* Fed. R. Crim. P. 29(a), which the district court denied. The jury convicted Adkins of conspiring to distribute (and possess) marijuana and fentanyl but acquitted him of the same as to heroin and cocaine.

C.

Sentencing proceedings began. Adkins's presentence report calculated a total offense level of 36. The report also found that Adkins fell into criminal history category

4

VI. Those calculations yielded an advisory Guidelines range of 262 to 327 months' imprisonment.

Adkins objected to the report on several grounds. He claimed that the report wrongly (1) held him responsible for acquitted conduct, that is, conspiring to distribute cocaine and heroin; (2) calculated his total offense level based partly on conduct before 2020; (3) denied him a four-point mitigating role reduction; (4) denied him a two-point acceptance of responsibility reduction; and (5) included in his criminal history score points for breaking a Virginia law that was no longer in force. Adkins also renewed his motion for a judgment of acquittal.

The district court overruled Adkins's objections and denied his renewed Rule 29 motion as untimely.[2]  Still, the court varied downward and sentenced Adkins to 180 months' imprisonment because of Adkins's partial guilty plea and the nonviolent nature of his criminal history.

This appeal followed.

---

[2] Adkins also objected that the government never proved some of the drug weights in his presentence report. The district court sustained that objection and amended the report accordingly.

## II.

Adkins first argues that there was insufficient evidence to support his conviction for conspiring to distribute fentanyl and marijuana.[3]  We disagree.

We review the district court's denial of a Rule 29 motion de novo.[4]  *United States v. Burfoot*, 899 F.3d 326, 334 (4th Cir. 2018).  We must sustain a guilty verdict if, viewing the evidence in the light most favorable to the prosecution, a reasonable jury could find the defendant guilty beyond a reasonable doubt.  *Id.*

Conspiracy to distribute or possess drugs under 21 U.S.C. § 846 requires (1) an agreement between two or more persons to violate a federal drug law; (2) the defendant's knowledge of the conspiracy; and (3) the defendant's knowing and voluntary participation in the conspiracy.  *United States v. Green*, 599 F.3d 360, 367 (4th Cir. 2010).  A jury can infer that a conspiracy exists "from a development and collocation of circumstances," so long as "the summation of the evidence permits a conclusion of guilt beyond a reasonable doubt."  *United States v. Tillmon*, 954 F.3d 628, 640 (4th Cir. 2019).

Adkins argues that the evidence was insufficient to convict him of trafficking fentanyl because no witness testified that Adkins was the one selling it.  He claims the evidence pointed only to Jenkins as the fentanyl distributor.

---

[3] Adkins also argues that his Rule 29 motion should have been granted for a charge of possession with intent to distribute fentanyl and marijuana.  But Adkins was charged with (and convicted of) conspiracy to possess—not possession itself.  So we don't address his misdirected argument.

[4] The government contends that Adkins didn't preserve his renewed Rule 29 motion. Because we conclude that sufficient evidence supports Adkins's conviction in any event, we don't decide whether or not he preserved his objection.

But a rational jury could find each of the elements required to convict Adkins beyond a reasonable doubt. The jury heard that Otey procured drugs for Adkins and that Adkins in turn gave those drugs to Jenkins to sell. In one intercepted phone call, Otey told Adkins that the heroin Otey had given Adkins was stronger than normal because it was laced with fentanyl. Adkins then prompted Jenkins to "cut" the heroin before distribution.

All said, the jury had enough evidence before it to conclude that Adkins agreed with Otey and Jenkins to sell fentanyl-laced heroin. Adkins, per the group's distribution model, handed the fentanyl-laced heroin to Jenkins for sale before instructing Jenkins to "cut" the drugs before distributing them. A reasonable jury could have found Adkins's agreement, knowledge, and participation in a conspiracy from those acts alone.

Adkins also argues that the evidence was insufficient to convict him of conspiring to distribute marijuana. He says that all the government proved was a "simple buyer/seller relationship": Rowland sold Adkins marijuana, and Adkins sold that marijuana to others. Appellant's Br. at 10. Though Adkins concedes that he distributed marijuana, he argues that Rowland never agreed to aid in that scheme, so the two never conspired.

Although "[a] mere buyer-seller relationship is insufficient to support a conspiracy conviction," such a relationship is "at least relevant (i.e. probative) on the issue of whether a conspiratorial relationship exists." *United States v. Howard*, 773 F.3d 519, 525–26 (4th Cir. 2014). "[A]ny agreement made *in addition to or beyond* the bare buy-sell transaction may be taken to . . . support a finding of conspiracy." *United States v. Mallory*, 40 F.4th 166, 180 (4th Cir. 2022). That's because "[e]vidence of continuing relationships and repeated transactions can support the finding that there was a conspiracy, especially when

7

coupled with substantial quantities of drugs." *Howard*, 773 F.3d at 526 (quoting *United States v. Reid*, 523 F.3d 310, 317 (4th Cir. 2008)).

The evidence (when construed in the government's favor) showed Adkins's marijuana dealings were more than a "simple buyer/seller relationship." For one thing, Adkins admitted that he made Elite Customs available for marijuana distribution. We doubt that a simple buyer or seller of marijuana would run a car repair shop as a front to distribute it. Also, when Adkins twice told Rowland that third parties wanted to buy marijuana, Rowland not only agreed to supply the marijuana to Adkins for that purpose but also joined in on the sales. Adkins admitted to these facts when he pleaded guilty, and the jury learned of them when the government read Adkins's signed stipulation of facts into the record.

Given this evidence, a jury could reasonably conclude that Rowland and Adkins conspired to sell marijuana. Adkins's sales could then show knowing and voluntary participation in the conspiracy.

In all, there was sufficient evidence to support Adkins's conspiracy conviction as to both fentanyl and marijuana.

III.

Next, Adkins objects to his sentence. He claims the district court procedurally erred by relying on improper evidence to sentence him and by denying him various Guidelines reductions. Adkins also challenges the substantive reasonableness of his sentence, which he argues was "longer than necessary" to satisfy 18 U.S.C. § 3553.

8

We review the procedural and substantive reasonableness of Adkins's sentence for abuse of discretion. *United States v. Elboghdady*, 117 F.4th 224, 233–34 (4th Cir. 2024). When doing so, we review the district court's factual conclusions for clear error and its legal conclusions de novo. *United States v. Cox*, 744 F.3d 305, 308 (4th Cir. 2014).

## A.

First, procedural reasonableness. A district court procedurally errs by "improperly calculating[] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). Adkins maintains that the district court miscalculated his Guidelines range by (1) considering conduct for which he was acquitted; (2) denying him a four-point mitigating role reduction; (3) denying him a two-point acceptance of responsibility reduction; and (4) overstating his criminal history.

### 1.

When the district court sentenced Adkins, our circuit precedents allowed "a sentencing court [to] consider uncharged and acquitted conduct in determining a sentence, as long as that conduct is proven by preponderance of the evidence." *United States v. Medley*, 34 F.4th 326, 335 (4th Cir. 2022); *see United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam).[5]

---

[5] The Guidelines have since been amended to exclude acquitted conduct from the definition of relevant conduct. U.S.S.G. app. C at 262 (Supp. 2024) (Amendment 826, effective Nov. 1, 2024). But that amendment isn't retroactive, so it doesn't apply here. *See* U.S.S.G. § 1B1.11(a).

9

The jury acquitted Adkins of trafficking cocaine and heroin, but the district court held Adkins responsible for those same acts at sentencing. The court concluded that the government had proven by a preponderance of the evidence that Adkins conspired to distribute both drugs. We agree.

At trial, Otey testified that he'd deliver heroin and cocaine to Adkins for distribution. And after Jenkins joined the scheme, Adkins gave Otey's heroin to Jenkins to sell for the group. Moreover, Chambers recalled Adkins showing him a "kilo of cocaine" at Elite Customs while recruiting Chambers to join Adkins's scheme. According to Chambers, Adkins gave him four and a half ounces of cocaine to "start [him] off" in the scheme. J.A. 553–56.

The jury apparently found that evidence insufficient to prove beyond a reasonable doubt that Adkins trafficked heroin and cocaine. But we see no clear error in the district court's conclusion that Adkins more likely than not dealt in both substances. So the district court didn't procedurally err by considering Adkins's acquitted conduct.[6]

2.

Next, we address Adkins's mitigating role reduction argument. The Guidelines instruct a district court to reduce a defendant's total offense level by four points "[i]f the

---

[6] Adkins also argues the district court procedurally erred by considering his pre-2020 conduct. He contends the only "evidence of distribution" against him "[was] for the two marijuana distributions that occurred in 2020 and 2021." Appellant's Br. at 15.

This argument is meritless. Otey testified that he and Adkins started dealing drugs sometime between 2016 and 2017, and Adkins conceded as much when he admitted at his guilty plea hearing that he'd maintained Elite Customs as a hub for drug distribution since early 2016.

10

defendant was a minimal participant in any criminal activity." U.S.S.G. § 3B1.2(a). The "critical inquiry" in a section 3B1.2(a) determination is "whether the defendant's conduct is material or essential to committing the offense." *United States v. Pratt*, 239 F.3d 640, 646 (4th Cir. 2001).

Adkins had the burden of showing by a preponderance of the evidence that he was a minimal participant in the conspiracy. *United States v. Akinkoye*, 185 F.3d 192, 202 (4th Cir. 1999). We review this issue for clear error. *United States v. Lawson*, 128 F.4th 243, 249 (4th Cir. 2025).

We see no error, much less a clear one. Phone calls between Adkins and his coconspirators revealed that Adkins was "at the top" of the conspiracy. J.A. 770. Adkins even called the conspiracy his "empire." J.A. 770. Above all, Adkins's shop was ground zero for the whole scheme. Elite Customs was where Adkins met his coconspirators to exchange drugs and distribute earnings.

In short, Adkins's conduct was central, not minimal. It wasn't clearly erroneous for the district court to deny him a mitigating role reduction.

3.

We turn to Adkins's contention that he was entitled to a two-point offense level reduction for his acceptance of responsibility. Section 3E1.1(a) of the Guidelines allows such a reduction "[i]f the defendant clearly demonstrates acceptance of responsibility."

Although "the [section 3E1.1(a)] reduction is not intended to apply to a defendant who puts the government to its burden of proof at trial . . . going to trial does not automatically preclude the adjustment." *United States v. Jeffery*, 631 F.3d 669, 678 (4th

11

Cir. 2011) (cleaned up). If "the defendant goes to trial to assert and preserve issues that do not relate to factual guilt," a reduction may still be appropriate. *Id.*

Adkins had the burden of showing that he clearly recognized and affirmatively accepted personal responsibility for his relevant conduct. *United States v. Carver*, 916 F.3d 398, 404 (4th Cir. 2019). We review the district court's denial of the reduction for clear error. *Id.*

Adkins's only argument that he accepted responsibility is that he pleaded guilty to most of the government's charges and the jury acquitted him of conspiring to distribute two of the four drugs he was charged with.

The district court noted that Adkins "undoubtedly admitted his guilt with respect to four counts of the Superseding Indictment; however, he did not admit his guilt with respect to the overall conspiracy that was at the heart of this case" and so denied the reduction. J.A. 1046. To the district court, there was "an inconsistency" between Adkins's admissions in his guilty plea and his choice to take the Count 1 conspiracy charge to trial. J.A. 1046.

Because pleading guilty to some charges "is not enough, by itself," to entitle a defendant to a reduction, *Carver*, 916 F.3d at 404, the district court correctly questioned whether Adkins had accepted responsibility for all his conduct. And because Adkins denied accountability for the overall conspiracy by putting the government to its burden of proof on Count 1, we see no clear error in the district court's determination that Adkins hadn't accepted full responsibility for his conduct.

12

4.

Finally, Adkins contends that the district court miscalculated his criminal history. His argument centers on ten criminal history points on his record for violations of a now-repealed law.

Virginia once made it a crime for a "habitual offender" to drive a car while their driving privileges were revoked. Va. Code § 46.2-357 (2019) (repealed 2021); *see Lilly v. Commonwealth*, 647 S.E.2d 517, 520–21 (Va. Ct. App. 2007) (sketching the law's statutory history). But Virginia repealed that law in July 2021. Act of Mar. 31, 2021, ch. 463, § 2, 2021 Va. Acts 1339, 1354. A Virginia court first adjudicated Adkins a habitual offender in June 2000. He received five convictions under the law before its repeal, resulting in ten criminal history points.

Adkins argues that because the habitual offender law has "been abolished," assigning him criminal history points for convictions under that law would be "oppressive and fundamentally unfair." Appellant's Br. at 17.

We reject this argument with two observations.

First, a conviction under a criminal law that has since been repealed still counts for federal sentencing purposes. The Guidelines define a "prior sentence" as "any sentence previously imposed upon adjudication of guilt." U.S.S.G. § 4A1.2(a).

Adkins doesn't contend that the sentences he received following convictions under the once-valid Virginia law weren't sentences imposed after adjudications of guilt. More importantly, the Guidelines expressly outline which convictions *aren't* included when

13

calculating a criminal history score, *see id.* § 4A1.2(d)–(*l*), and convictions resulting from a repealed law are nowhere to be found.

Second, Adkins's criminal history includes more than driving offenses. As the district court noted, Adkins's record features "multiple offenses for assault and battery, multiple offenses for evading police, [a] violation of the Drug Control Act, and forgery of public records." J.A. 1075.

We see no clear error in the district court's finding that, when taken as a whole, Adkins's criminal history shows a "wanton disrespect [for] the law." J.A. 1054. So we can't say that Adkins's criminal history score, even including his habitual driving offenses, "substantially over-represents the seriousness of [his] criminal history." U.S.S.G. § 4A1.3(b)(1).

## B.

Now, on to substantive reasonableness, which we assess by looking at "the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *United States v. Arbaugh*, 951 F.3d 167, 176 (4th Cir. 2020).

Because the district court properly calculated the advisory Guidelines range, and Adkins's sentence was below that range, we presume that his sentence is substantively reasonable. *United States v. Gutierrez*, 963 F.3d 320, 344 (4th Cir. 2020). Adkins can rebut this presumption only by showing that his sentence is unreasonable when measured against the statutory sentencing factors. *Id.*

14

Adkins argues that his sentence is substantively unreasonable because it created an unwarranted sentencing disparity between him and his codefendant Rowland, who pleaded guilty to distributing cocaine. *See* 18 U.S.C. § 3553(a)(6).

This argument goes nowhere. "A sentence is not unreasonable under § 3553(a)(6) merely because it creates a disparity with a co-defendant's sentence." *Lawson*, 128 F.4th at 257 (cleaned up). Instead, § 3553(a)(6)'s primary goal is to "eliminate unwarranted disparities *nationwide*." *Id.*

Adkins offers no evidence that his sentence is disproportionate to sentences for similar conduct imposed by other courts nationwide. And even still, Adkins and Rowland aren't similarly situated.

Rowland pleaded guilty to conspiring to distribute over 500 grams of powder cocaine. Rowland's single offense and his category II criminal history score yielded a Guidelines range of 51 to 63 months. The district court sentenced Rowland to 60 months' imprisonment, on the upper end of his Guidelines range. Adkins had more charges and a much higher criminal history score, so it's no surprise that his sentence was more severe than Rowland's—even though the court granted a downward variance to Adkins but not Rowland.

The district court reviewed the sentences of Adkins's codefendants and accounted for the need to avoid any unwarranted sentencing disparities by varying downward in Adkins's case. We see no abuse of discretion in the court's refusal to do more.

Adkins also contends that his 180-month sentence is "longer than necessary to achieve the goals" of § 3553. Appellant's Br. at 11. Again, we disagree.

15

The district court sentenced Adkins to far less time than the Guidelines recommended.  The court noted Adkins's nonviolent criminal history but believed the frequency of his unlawful conduct showed a "wanton disrespect for the law."  J.A. 1054.  The court also found that the sophistication and secrecy of the conspiracy reflected a need to "provide just punishment" and "afford adequate deterrence" to future conduct.  J.A. 1075–76.  This, the district court said, warranted a serious sentence.

Still, the court varied downward because of Adkins's partial guilty plea and generally nonviolent criminal history.  Adkins offers no persuasive reason to question the extent of the court's generosity.

IV.

For these reasons, we affirm the district court's judgment.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us and because argument would not aid in our decision.

*AFFIRMED*

16